THE STATE ex rel. FRANK M. RUMBOLD, Adjutant-General, v. JOHN P. GORDON, State Auditor.

**In Banc, December 16, 1911.**

1. **MANDAMUS: Practice: Petition for Writ: Motion for Judgment.** Where respondent in mandamus makes return without service of the writ, the petition is taken as and for the writ; and if thereupon, the return coming in, relator moves for judgment on the pleadings, such motion is in the nature of a demurrer to the return; relator thereby, barring mere legal conclusions, inferences and comments in the return, electing to stand on the admissions, and allegations of fact well pleaded in the return.

2. **SALARY OF OFFICER: Increase: No Fixed Term.** A statute declaring "the Governor shall appoint the Adjutant-General, who shall hold office during the term of the Governor and may be removed by him at his pleasure," does not fix any term to the office, does not give it either a definite time of beginning or ending, but makes the tenure dependent on the Governor's pleasure, and therefore the constitutional provision that says "the compensation or fees of no State, county or municipal officer shall be increased during his term of office" does not apply. The General Assembly has the power to increase the salary of the Adjutant-General from $2000 to $2500 during the time he holds office under appointment of the Governor, and an incumbent of the office who had been appointed while the salary was $2000 and continued in office until after the act increasing the salary to $2500 became effective is entitled to receive the increased salary.

3. **TERM OF OFFICE: At Pleasure.** An officer who may be removed at the pleasure of the Governor has no certain fixed term of office. The statute declaring that the Adjutant-General shall hold office "during the term of the Governor and may be removed by him at pleasure" means that at most he can hold only for such time as the Governor does, but may be removed at any time. So interpreted no part of the statute perishes, but all the words are given a natural meaning. The Adjutant-General does not have a "term of office" in the constitutional sense.

## Mandamus.

WRIT AWARDED.

*Harvey C. Clark, Arthur L. Oliver* and *Allen C. Orrick* for relator.

(1) The General Assembly is vested with power to provide for the office of Adjutant-General and to fix the status, compensation and term of the incumbent. The Militia Act of 1905, under which relator was appointed and held office, having been repealed, section 8 of article 14 of the Constitution does not deprive him of his right to draw the salary fixed by the present law, which provides for an Adjutant-General with qualifications, duties, status and compensation different from those prescribed in the repealed law. He is not within the inhibition of the above named section of the Constitution because: First. Irrespective of the power of the General Assembly to abolish the office, the act repealing the Act of 1905 and reorganizing the National Guard and which incidentally increased the compensation of the relator, does not prevent his drawing the increased salary, because such incidental increase is not in violation of the letter and spirit of the section of the Constitution relied upon by the respondent. Sec. 8, art. 14, Constitution; State ex rel. v. Ransom, 73 Mo. 89; State ex rel. v. McGoonney, 92 Mo. 248; 23 Am. and Eng. Ency. Law, 407. Second. With the repeal of the Act of 1905 under which he was appointed and commissioned, relator's office under such statute was abolished and he now holds office under and by virtue of an appointment under section 8334 of the present law which is another and different office, requiring different qualifications and duties and in which the status and compensation of the incumbent are different. (2) In paragraph 15 of his return, respondent sets up the alleged failure of relator to qualify by filing his bond within a certain time, etc. Relator's title to this office cannot be determined in a mandamus proceeding to compel the payment of his salary. State ex rel. v. Churchill, 41 Mo. 41; Mechem on Public

Officers, 265. (3) If, as respondent contends, the repeal of the Act of 1905 under which relator held office did not terminate his incumbency of such office, then his resignation did have that effect and he is not prevented by the Constitution from drawing the salary of the office created under section 8334 to which he was appointed. If, as respondent contends, relator holds office under the appointment made pursuant to the provisions of section 4 of the Act of 1905, he does not fall within the inhibition of section 8 of article 14 of the Constitution for the reason that he was not and is not an officer within the meaning of this provision, not having a fixed, certain and definite term of office, but holding during the pleasure of the Governor. 23 Am. and Eng. Ency. Law, 404. The word "term" used with reference to the tenure of offices means a fixed and definite time and does not apply to appointive offices held at the pleasure of the appointing power. Throop on Public Officers, sec. 303; Speed v. Crawford, 3 Met. (Ky.) 207; In re Baty, 52 N. Y. 871; Gibbs v. Morgan, 39 N. J. Eq. 126; City of Lexington v. Remick, 50 S. W. (Ky.) 1106; Somers v. State, 58 N. W. 804; State ex rel. v. Stonestreet, 99 Mo. 371; State ex rel. v. Johnson, 123 Mo. 43; Summers v. State, 5 S. D. 321.

*Elliott W. Major,* Attorney-General, and *Charles G. Revelle,* Assistant Attorney-General, for respondent.

(1) The State militia and the office of Adjutant-General are creatures of the Constitution, and made permanent branches of the State government. They cannot be abolished by the Legislature, and that body has never so attempted. Constitution 1865, sec. 1, art. 10; State ex rel. v. Hawes, 177 Mo. 360; Constitution 1875, art. 13, sec. 6. By this article the State militia and the office of Adjutant-General were made a permanent part of the State government, and it is no more

within the power of the Legislature to abolish them than it is to abolish the Supreme Court, or the offices of its members, or to deprive it of the jurisdiction conferred by section 3, article VI in cases of *quo warranto* (State ex rel. v. Standard Oil Company, 218 Mo. 346), or to remove an officer from office (State ex rel. v. Gordon, 236 Mo. 142), or to provide that some person, other than the Governor, shall appoint the Adjutant-General (State ex rel. v. Gordon, supra). The addition of section 6 to the organic law in 1875 is significant and was made for a purpose. Section 7, article 5 of the Constitution also recognizes the permanency and necessity of the State militia as a governmental institution, and makes it a means and agency to preserve order and execute the law. It is no more within the power of the Legislature to cripple the executive arm and deprive the Governor of this means of executing his power and prerogatives than it is to take from this court the means and power of enforcing its lawful orders and decrees. State ex rel. v. Stone, 120 Mo. 428; State ex rel. v. Shepard, 177 Mo. 238. (2) Relator was appointed for a fixed term of office, beginning on the second Monday in January, 1909, and ending on the second Monday in January, 1913, and section 8, article 14, of the Constitution precludes him from recovering an increased compensation during that period. The Adjutant-General is required to take an official oath, give an official bond, and can be called to account, as a public officer, for misfeasance or nonfeasance in office. He is on a regular salary basis, and has continuing public duties, the nature and performance of which are prescribed by law and not by contract. He is an officer within the meaning of that term, and as the same is used in the Constitution. State ex rel. v. May, 106 Mo. 507; State ex rel. v. Mason, 153 Mo. 23; City of Brookfield v. Tooey, 141 Mo. 619; State ex rel. v. Maroney, 191 Mo. 545; 23 Am. and Eng. Ency. Law, 435; 29 Cyc. 1371, 1396; State ex rel

v. Hawes, 177 Mo. 360. It necessarily follows that if the Legislature had intended that relator should not have a fixed term of office, as those words are understood and defined, and was to be appointed as a mere *locum tenens,* it would not have expressly stated that which would have been the law in the absence of such a statement, viz.: that he could be removed at the pleasure of the appointing power. It is also well established that where a statute attaches to an office a fixed term and the officer is appointed for that term, and when the power of removal is not expressly declared by that particular law to be discretionary, such officer is not removable, except for cause. State v. City of St. Louis, 90 Mo. 19; Hallgreen v. Campbell, 82 Mich. 235; State ex rel. v. Maroney, 191 Mo. 549. (3) The legislative Act of 1909 did not have the effect of ending or abridging relator's term and did not affect his status as an officer. The State militia and the office of Adjutant-General are created by the Constitution, and are made a permanent branch of the State government, being placed wholly beyond legislative destruction. By the Act of 1909, revising and amending the law on this subject, the Legislature, therefore, did not intend, and it was not within its power, to abolish relator's office. 23 Am. and Eng. Ency. Law 410; Farrel v. Pingree, 5 Utah, 443; Bird v. Johnson, 59 N. J. L. 59; Moss v. Fitch, 212 Mo. 484; Peters v. Auditor, 33 Gratt. 368; State ex rel. v. Haskell, 5 Cal. 357; State ex rel. v. McKinney, 52 N. Y. 374; State ex rel. v. Ferguson, 62 Mo. 77; State ex rel. v. Thompson, 41 Mo. 25; State ex rel. v. May, 106 Mo. 488; Brookfield v. Tooey, 141 Mo. 619. (4) If the Act of 1909 were construed to affect his term or incumbency, he is, nevertheless, holding as a *locum tenens* under his original appointment, and can avail himself of no provision of this act. Even if it were possible to contend that the act had the effect to end his term, he is still holding over under and in pursuance of his original ap-

pointment, because he has at no time lawfully and in good faith resigned, nor has he been removed from office, nor has he been legally reappointed or qualified. Even upon this theory, his compensation could not be increased. State ex rel. v. Smith, 87 Mo. 158. (5) Relator's pretended resignation and reappointment had no legal force, and is unavailing as a means to evade the fundamental law. Larew v. Newman, 81 Cal. 588; Green v. Freeholders, 44 N. J. L. 388; 23 Am. and Eng. Ency. Law, 401. (6) By reason of his failure to qualify under the alleged new appointment, he can enforce no demands thereunder. 23 Am. and Eng. Ency. Law, 354, 355; People v. Whitman, 10 Cal. 38; Hull v. Sup. Ct., 63 Cal. 174; Wells v. Atlanta, 43 Ga. 77; Foster v. Justices, 9 Ga. 185; Jones v. Gridley, 20 Kan. 590; Jump v. Spence, 28 Md. 1; George v. School District, 6 Met. (Mass.) 497; Oregon v. Colvig, 15 Ore. 57; Commonwealth v. Slifer, 25 Pa. St. 23. In this connection, it is also well established that an officer who has not complied with the requirement, as to giving bond, cannot recover compensation for services rendered in his official capacity. 23 Am. and Eng. Ency. Law, 355; Payne v. San Francisco, 3 Cal. 122; Albaugh v. State, 145 Ind. 356; State v. Schram, 82 Minn. 420; State v. McLeod County, 27 Minn. 90; McVeany v. New York, 80 N. Y. 185; Wiley v. Worth, 1 Phil. L. (61 N. C.) 171; State v. Eshelby, 1 Ohio Cir. Dec. 592; Commonwealth v. Slifer, 25 Pa. St. 23; Riddle v. Bedford County, 7 S. & R. (Pa.) 386; Philadelphia v. Given, 60 Pa. St. 136; Kottman v. Ayer, 3 Strobh. L. (S. C.) 92; McBee v. Hoke, 3 Spears's L. (S. C.) 138; Thomas v. Owens, 4 Md. 189.

LAMM, J.—Relator, contending his salary as Adjutant-General is $2500 per annum, and respondent, State Auditor, contending it is but $2000 per annum, sues by mandamus to compel an audit and payment of his salary at the former figure. Respondent ap-

pears without service of an alternative writ and makes his return.  By that course the petition stands as and for the writ itself for the purposes of the case and the return.  On the return coming in, relator filed a motion for judgment on the pleadings.  Such motion is in the nature of a demurrer to the return.  Thereby (barring mere legal conclusions, inferences and comments in the return) relator elects to stand on the admissions, and allegations of fact well pleaded in the return.  They are taken as true and all allegations of the petition sufficiently traversed by the return are taken as false.

Attending to respondent's return, it appears therefrom there is a main question which if ruled in favor of respondent, then (and not till then) other questions raised by the return demand determination.  If, however, it be ruled in favor of relator then such other questions have no place in the case and may be laid out of view, as will presently appear.  Before formulating that main question we shall state those admissions and averments of the return on which it arises, viz.:

The return admits, to-wit:

(1)  That the Forty-sixth General Assembly passed an act approved by the Governor with an emergency clause, putting it into effect March 15, 1911, whereby $5000 was appropriated to pay the salary of the Adjutant-General for the years 1911 and 1912. [Laws of 1911, p. 32, sec. 8.]

(2)  That there are funds in the treasury available to pay said appropriation.

(3)  That in 1909 an act was passed fixing the salary of the Adjutant-General at the sum of $2500 per annum, payable monthly.  [Laws 1909, p. 674, sec. 3; R. S. 1909, sec. 8334.]

(4)  That prior to that, in 1905, an act was passed making the salary of the Adjutant-General $2000 per annum, payable monthly.  [Laws 1905, p. 221, sec. 4.]

(5) That the same section 4 provides in its final clause that: ''The Governor shall appoint the Adjutant-General and his honorary staff, who shall hold office during the term of the Governor and may be removed by him at his pleasure.'' It also provides that the staff of the Governor shall consist of an Adjutant-General and other named officers, and that he (the Adjutant-General) ''shall be the military secretary to the Governor.''

(6) That relator was duly appointed and commissioned Adjutant-General of the State on the 11th day of January, 1909, on that day qualified and (quoting) ''entered upon the discharge of his official duties as Adjutant-General under such appointment and commission . . . *and has been filling said office of Adjutant-General and acting as such officer continually from said 11th day of January, 1909, to the present time.*''

(7) That relator was so appointed and commissioned under said Act of 1905, fixing his salary at $2000 per annum, and that his appointment was for a certain fixed and definite time, to-wit, four years after the second Monday of January, 1909.

(8) That, the premises considered, his salary could not be legally increased during his said official term because of a constitutional interdiction (Constitution, sec. 8, art. 14), viz.: ''The compensation or fees of no State, county or municipal officer shall be increased during his term of office; nor shall the term of any office be extended for a longer period than that for which such officer was elected or appointed.''

(9) That the Legislature was without power to increase relator's salary during his said term.

(10) That relator presented to respondent his accounts for a certain three months in 1911 for $625 (*i. e.,* on a salary basis of $2500), whereupon respondent made no objection thereto except to the amount,

which said amount should have been on a salary basis of $2000 per annum instead of $2500.

(11) The return further alleges, to-wit: "Respondent states that relator has not been removed from office, *but has acted continuously as the Adjutant-General of the State of Missouri from the 11th day of January, 1909, to the present time and is now Adjutant-General of said State.*"

Such are the admissions and averments of the return from which the main question spontaneously springs, viz.: Is the Adjutant-General of the State of Missouri an officer of the class coming within the words and intendment of the constitutional provision invoked? If he is not, then the constitutional bar can not be put up in the way of an increase in his salary. If he is, then, as said, other questions are sprung for decision.

Attending to the main question, its answer finds itself in the very words and intendment of the Constitution. Those words are common to many Constitutions. They were carefully chosen, have been frequently under judicial scrutiny, and have received a definite judicial construction, as will be seen further on. Observe, the Constitution does not say that the salary of no officer can be increased at any time. It says such salary shall not be increased *during* a certain time or while a certain thing lasts. What is that time or thing? It is "his term of office." Therefore the officer in mind is not *any* officer, but is one of a definite kind, one who has an official term. If an officer has no "term of office" he does not measure up to the constitutional subject-matter and is not within the words or intendment of the Constitution. Undoubtedly the Adjutant-General is an officer and has an office, but has he a "term of office?" Or, to turn the phrase end for end, to let it interpret itself, has he an office with a *term?* In the nature of things there cannot be a term of office unless the office has a term.

The idea is fortified by the constitutional interdiction against lengthening a term of office; for it is a logical absurdity to speak of not extending a term of office unless the term exists to extend.

A "term," at root, is the same as *terminus*, a boundary limit, and there can be no boundary limit without a fixed or certain beginning and a fixed or certain ending. A serviceable sidelight is thrown on the matter by reference to some familiar principles of real estate law. The word *term* is of common use in conveyancing. A lease for years is a term, and before an estate for years can be a term it must have a certain beginning and a certain ending, its duration must "be measured by fixed periods, as by years, months, weeks, etc." [2 Preston on Conveyancing, p. 158.] Again [Ibid, 159, *et seq.*]: "When it is said, . . . in the language of Lord Coke, 'regularly in every lease for years, the term must have a certain beginning and a certain end,' this is to be understood in its legal and technical sense. The only circumstance required in limitations of terms for years is, that a precise time shall be fixed for the continuance of the terms; so that when the commencement of the term is ascertained, the period of determination, by effluxion of time, may be known with certainty." [Idalia Co. v. Norman, 232 Mo. l. c. 670, *et seq.*] So, agreeably to the same end, it is good doctrine that the maxim, That is certain which can be made certain (*Id certum est, etc.*), is applied in resolving any doubt on whether a *term* is granted. Thus, if the beginning is certain, and if the end can be made certain by reference to some mentioned certainty, a term is granted. By the same token a lease without a *term* creates a tenancy at will, unless by reservation of annual rent it may be construed on equitable principles as a lease from year to year. [See Idalia Case, supra.]

238 Sup.—12

But the matter need not rest on mere parity of reasoning. Says a sound author (Mechem's Public Offices and Officers, sec. 385): "The word 'term,' when used in reference to the tenure of office, means ordinarily a fixed and definite time, and does not apply to appointive offices held at the pleasure of the appointing power."

In accord therewith in another standard work (Throop on Public Officers, sec. 303): "The word 'term' is uniformly used to designate a fixed and definite period of time. . . . And an officer, who holds his office at the pleasure of another officer . . . has no official term, within the meaning of a constitutional or statutory provision relating to such term." Again (Sec. 304): "Where an office is filled by appointment, and a definite term of office is not fixed by a constitutional or statutory provision, the office is held at the pleasure of the appointing power, and the incumbent may be removed at any time."

In other States appellate tribunals seem in uniform accord with the texts of the quoted authors: Vide, Speed v. Crawford, 60 Ky. (3 Met.) l. c. 213. In re Batey, 52 N. Y. Supp. l. c. 872; Gibbs v. Morgan, 39 N. J. Eq. 126.

In City of Lexington v. Renick, 105 Ky. l. c. 779, in discussing an equivalent constitutional provision the court adopts the cited text from Mechem (p. 783). The Kentucky Constitution is leveled at *any* change in the compensation of an officer "during his term of office." In interpreting that provision the court in that case said: "It was designed to protect an officer during his term in the enjoyment of the compensation attached to it when he was elected, and to prevent his appealing to the city authorities for more; but it can have no reasonable application to an officer who may be turned off at pleasure, because if the city may turn him off, and then hire him or somebody else any day at another price, we see no reason why it may not reach the end

directly, and cut his salary down in the first place. Such constitutional provisions are common, and are uniformly, so far as we have seen, confined to officers having definite terms.''

The inquiring student may further consult Somers v. State, 5 S. D. l. c. 325; Ida, etc., Bank v. Seidensticker, 92 N. W. (Iowa) l. c. 866; Crovatt v. Mason, 103 Ga. l. c. 254; State ex rel. v. Breidenthal, 55 Kan. l. c. 312; State ex rel. v. Tallmann, 24 Wash. l. c. 430.

"A term of office," says the Court of Appeals of New York, speaking through CHURCH, C. J., "is a fixed period prescribed for holding the office." [People v. Brundage, 78 N. Y. l. c. 407.]

Speaking to a kindred matter, the Supreme Court of Maryland in Field v. Malster, 88 Md. l. c. 695, says: "The power of removal is essentially incident to and included in the power to terminate the tenure of an officer, and the power to terminate a tenure is inseparable from a holding at the pleasure of another." Further along, in defining a term of office and applying that definition to the facts in judgment, it is said in the same case: "The *beginning* of the term is fixed; the time when the successors of the incumbents shall enter is also fixed, and this marks the *end* of the term; and the selections are to be made biennially, and this *designates* the duration of the term. Every element that is necessary to make a definite term is present— the beginning, the end and the duration."

In full accord with the general doctrine of the cited cases are our own appellate courts. [State ex rel. v. Alt, 26 Mo. App. l. c. 675-6 (*arguendo*); State ex rel. v. Stonestreet, 99 Mo. l. c. 371, *et seq.*] In State ex rel. v. Johnson, 123 Mo. 43, relator Kane, chief of the fire-department of St. Joseph, had his salary increased. He held office during the pleasure of the city council. In holding that the constitutional inhibition did not apply, we said (p. 49): "It will be observed that this section of the Constitution only em-

braces within its provisions officers who are elected
or appointed for some specific or definite time, and
that it has no application whatever to the case in hand,
when the relator's term of office is not fixed by any law
or ordinance and he simply holds at the pleasure of
the appointing power. This is manifest from the fact,
that it also provides that the term of office shall not be
extended for a longer period than that for which such
officer was elected or appointed. The relator was not
elected, nor was he appointed for any definite time.
There does not seem to be room for argument in re-
gard to the proper meaning of this section, so plain
is it in its construction.''

The gist of the holding is put by our reporter
in the first paragraph of the head-notes, viz.: ''A city
officer appointed by the council and subject to removal
by it at pleasure is not an officer within the meaning
of the Constitution, article 14, section 8, prohibiting
the increase of the salary of an officer during his term
of office.''

Indeed in every decided case coming under my
eye, in which we held the constitutional provision did
apply, the officer had a fixed and definite term of office,
and if subject to removal at all it was only for cause
shown, on a hearing in which he was entitled to due
process of law in the form of a notice and charges
preferred.

Recognizing the precision of definition judicially
indulged in the exposition of the constitutional provi-
sion now up, as already indicated, we now come to a
closer view of the case and to the application of the
doctrines announced to the facts in judgment. The
final question is: Considering the terms of the law
of 1905 under which relator was appointed, does he
have a ''term of office'' in a constitutional sense?
Clearly no. The statute provides that the Adjutant-
General shall be appointed by the Governor, that he
shall be military secretary to the Governor and that

he "shall hold office during the term of the Governor and may be removed by him at his pleasure." If the statute had said he should hold office "during the term of the Governor" and had broken off at that point we would have a different case to deal with. In such case his term would have the same boundaries as the Governor's term. By referring to this certainty, the term of the Adjutant-General would be made certain and the maxim, *id certum est,* would control the situation. But the law does not break off there and neither should we in the exposition of it. It goes on to say in the same breath that the Governor may remove him at "his pleasure." The Governor's breath, under the law, made him, and the Governor's breath is left to unmake him. The appointing power has left to it the *dis*appointing power unchecked, free of limit in time, place or circumstance. No man who holds office at the pleasure of another can be said to have a certain fixed term of office. The two ideas are radically antagonistic and in right reason they cannot both apply at the same time to the same thing. The Governor's "pleasure" has no fixed bounds discernible to the judicial eye.

It seems to us that the cited authorities directly apply to the situation thus presented; for the sum of the matter is that any one that holds office at the pleasure of the appointing power has no "term of office" in the sense that phrase is used in the Constitution. This view of it does not make the words "hold office during the term of the Governor" perish by construction. Those words are still left as a legislative direction that in any and all events the military secretary of the Governor shall step down and out with the Governor himself. The Governor is the commander in chief of the National Guird by virtue of his office, and when he lays down his official sword his military secretary must lay down his official pen. The construction given

but makes the whole law alive by giving some sensible office to all its words.

Hitherto, we take it, such has been the administrative policy in dealing with a legislative increase of salary where the officer interested holds his office during the pleasure of the appointing power.

Let us put one case as an example. The statute authorizes us to appoint a librarian. The condition is such that he holds under our pleasure. Twice during the present librarian's official life his salary has been increased by the General Assembly, once from nine to twelve hundred dollars (Laws 1905, p. 304), and again from twelve to fifteen hundred dollars (Laws 1907, p. 355). In each instance he has been allowed to take, as was right, his increased salary.

Our learned Attorney-General makes an ingenious argument against such construction. As we grasp it his contention is that relator's term of office has a fixed and definite tenure, to-wit, that of the Governor, and that the removal part of the statute brings into view a new and independent matter, viz., the power of removal which may be exercised at pleasure. But we do not think a fair construction of the law allows it to be taken apart and then joined together so as to make of it two independent provisions. The clause in hand is inseperable, relates to the same subject-matter and what the Legislature hath joined together we ought not put asunder. Our conclusion is an absolute writ of mandamus should go on the return of respondent.

As already said this view of the case renders a consideration of other features of the return unnecessary. The statute of 1909 seems to repeal all former militia laws (Laws 1909, p. 673). In those repealed statutes were the provisions for the appointment of an Adjutant-General, prescribing his duties and regulating his pay. Relator had been in office but a short time when that repeal went into effect. The new act provided for the appointment of an Adjutant-General, prescrib-

ed (with some of the old) different duties, and an in-creased pay.  It seems relator resigned and was at once reappointed.  Our Attorney-General argues that this resignation and appointment were not rendered neecessary on the theory the new act abolished the old office and created a new one.  He argues the office was a constitutional office and could not be abolished by the lawmaker.  But we need not pursue the matter.  Re-spondent alleges in his return that the resignation and reappointment were simulated and for the purpose of getting around the constitutional provision we have been discussing.  That it amounted to nothing in fact and left relator always in office.  It is obvious that with a return of that character, demurred to, we con-front the fact that for the purposes of this case, what-ever the real fact may be, relator has always been Adjutant-General without let or intermission since the day of his original appointment to this very time.  Such is the theory of our Attorney-General and that theory on the return here we must adopt and have adopted with the result stated.

An absolute writ of mandamus is ordered to issue commanding the Auditor to audit and allow the claim of the Adjutant-General to an annual salary of $2500, payable monthly.  Such writ will make effective the plain legislative intent evidenced by the Appropriation Act of 1911.  All concur.