THE STATE ex rel. J. H. EMMONS v. L. D. FARMER et al., Judges of County Court, and E. C. CAMPBELL, Clerk of County Court, Appellants.

In Banc, June 30, 1917.

1. **TITLE TO ACT:** Changing Compensation of Circuit Clerk: From Fees to Salary. A title to an act "changing the method of payment of salaries of circuit clerks" is sufficiently comprehensive to embrace provisions in the body of the act changing their compensation from fees to stated monthly installments payable out of the county treasury. Under the existing statute the maximum sums which could be annually retained by circuit clerks from their fees could properly be called "salary," and hence the title was not misleading.

2. **INCREASE OF SALARY:** During Term. The Act of 1915 fixing the salaries of circuit clerks at the same amounts they could retain in any one year from the fees collected by them, is not violative of the constitutional provision declaring that "the compensation of no state, county or municipal officer shall be increased during his term of office." Even though the fees in some counties in prior years did not equal the amounts they were permitted to retain, yet if the act fixes their salaries at the same amounts they were permitted to retain at the time they were inducted into office, it does not increase their compensation, at least not to the point of being unconstitutional.

3. **TERM OF OFFICE:** Reelection. An officer, reelected to a second term, is not bound to content himself with the salary fixed for his office at the time he was first elected thereto. Each official term stands for itself. The constitutional provision forbidding an increase or decrease of compensation during a term of office has reference to the term fixed by the statute only, and in no wise refers to the individual who may incidentally happen to be the incumbent for more than one term.

Appeal from Callaway Circuit Court.—*Hon. David H. Harris*, Judge.

AFFIRMED.

*Judson Sanderson, N. T. Cave* and *H. N. Eversole* for appellant.

(1) The circuit court erred in holding that section 1 of an act entitled "Salaries and Fees: Salaries of circuit

State ex rel. v. Farmer.

clerks in certain counties," approved March 22, 1915, p. 378, was valid and not in conflict with section 8 of article 14 of the Constitution of Missouri. Folk v. St. Louis, 250 Mo. 116; State v. Bland, 91 Kan. 160; State v. Raine, 49 Ohio St. 580; People v. McCord, 143 Ill. App. 28; Williams v. Garey, 19 Cal. App. 769: (2) The circuit court erred in holding that section 1 of said act was valid and not in conflict with section 28 of article 4 of the Constitution of Missouri. State v. Miller, 45 Mo. 495; State v. Weitzel, 130 Mo. 616; St. Louis v. Wortman, 213 Mo. 139; State v. Persinger, 76 Mo. 347; State ex rel. v. Heege, 135 Mo. 112; Cooley on "Constitutional Limitations" (7 Ed.), p. 205. (3) The circuit court erred in holding that section 1 of said act applied to any circuit clerk of any county mentioned in the act who was an incumbent of said office on and prior to July 1, 1915. Folk v. St. Louis, 250 Mo. 116.

*Frank M. McAllister*, Attorney-General, *S. P. Howell*, Assistant Attorney-General, *De Witt C. Chastain, Alex. Z. Patterson, J. R. Baker* and *Finley & Sapp* for respondent; *James E. Boggs* of counsel.

(1) The act in question is not in conflict with section 8 of article 14 of the Constitution of Missouri. (a) Courts will not lightly declare statutes unconstitutional. There is a strong presumption of their constitutionality and their invalidity must appear beyond a reasonable doubt. Greene County v. Lydy, 263 Mo. 87; State ex rel. v. McIntosh, 205 Mo. 602. (b) The act in question, Laws 1915, p. 378, does not change the amount of compensation fixed by the prior law, Laws 1913, p. 703. People v. Gaulter, 149 Ill. 39; State ex rel. v. Nye, 135 N. W. (Wis.) 126. (c) It does not appear from the record that relator did not earn the full $2000 allowed him by the Act of 1913, and if he did earn that amount, he will be entitled to it, even though it may be collected by his successor. To say that relator's compensation has been increased, in any sense, is mere conjecture. Pugh v. Evans, 31 Mo. App. 290; Lycett v. Wolff, 45 Mo. App. 489; Allen v. Cowan, 96 Mo. 193; Thornton v. Thomas, 65 Mo. 276; State ex rel. v. Nye, 135

N. W. (Wis.) 126. (2) The act in question is not in conflict with section 28 of article 4 of the Constitution of Missouri. (a) Appellants' argument on this point assumes that the compensation of circuit clerks has been increased. (b) While this provision of the Constitution is mandatory it should be liberally construed, and mere generality of title will not vitiate an act, unless it shows a design to mislead. State ex rel. v. County Court, 128 Mo. 427; State v. Doerring, 194 Mo. 398; Ferguson v. Gentry, 206 Mo. 189; State ex rel. v. Vandiver, 222 Mo. 206; O'Connor v. Transit Co., 198 Mo. 622.

FARIS, J.—This is a proceeding by mandamus, whereby it is sought to compel defendants, who are the judges of the county court of Callaway County, Missouri, and the clerk of said court respectively, to issue to relator a warrant on the county treasurer of said county for the sum of $166.66, in payment of relator's salary as clerk of the circuit court of Callaway County for the month of August, 1915. The alternative writ issued herein by the court *nisi* was upon trial therein made peremptory and defendants appealed.

The facts are few and simple and touching them there is no dispute; they run substantially thus: Relator is now and has been since the 1st day of January, 1911, clerk of the circuit court of Callaway County. He is now serving his second term as such clerk; the term for which he was first elected having expired on the 31st day of December, 1914. On the 1st day of January, 1915, having been re-elected, relator duly entered upon his second term as such circuit clerk.

It is conceded by the pleadings that pursuant to the method pointed out by statute for ascertaining the population of Callaway County, said county contains between twenty-five and thirty thousand population. At the September term of the county court of Callaway County, relator, in all things following the provisions of an act of the Legislature, passed in 1915, and approved March 22, 1915, and which act pursuant to the express provisions thereof took effect July 1, 1915, presented to the county court his

account for salary as circuit clerk for the month of August, 1915, accompanied by reports in proper form. Defendants refused to order, or to issue and sign, a warrant for relator for such salary on the ground that the Act of 1915 which had put all circuit clerks of this State upon a salary basis of compensation, was unconstitutional.

The act in question is entitled: "An Act changing the method of payment of salaries of clerks of circuit courts, except in any county wherein the clerk of the circuit court is *ex officio* recorder of deeds of said county; and provided further that the provisions of this act shall not apply to any county which now contains or may hereafter contain a city of 75,000 inhabitants or more, or to any county which now contains or may hereafter contain eighty thousand inhabitants and less than one hundred and fifty thousand inhabitants in which circuit court is held in two or more places in said county, providing for the appointment and payment of deputies, and requiring clerks to pay into the county treasury all fees collected by them." [Laws 1915, p. 378.]

The above act in section one thereof provides in brief substance that clerks of the several circuit courts of the several counties of this State shall annually receive for their services in lieu of all fees, a certain specified salary, based upon the population of the given county, and concretely provides in cases of all counties having a population such as Callaway County has, that the circuit clerk thereof shall receive the sum of $2,000 per annum. There are provisions in section 2 of said act for the appointment and payment of deputy clerks, which however have no relevancy here. Section 3 of said act provides that the salaries of the circuit clerk and his deputies shall be paid by warrants drawn upon the county treasury in monthly installments, at the end of each month, and that the circuit clerk and his deputies shall present their accounts to the county court and such court shall draw its warrant upon the county treasury accordingly. It is provided by section 4 of the act that all fees heretofore retainable by the several circuit clerks as and for their compensation, shall

be 'duly collected by them and paid over monthly to the county treasurer.

All of the above facts are either conceded by the pleadings, or they are admitted by the respective parties in the briefs filed. It is contended by defendants, who are the appellants here, that the Act of 1915, pursuant to which relator demanded payment from the county, is void, because it is in violation of the provisions of section 8 of article 14 of the Constitution and of section 28 of article 4 thereof. These are the only points made or urged upon us and to them alone will our attention be directed in the subjoined opinion. The question whether mandamus is upon the facts a permissible remedy was not raised below, nor is it raised here. Both sides in both courts conceded tacitly its applicability; hence we take the case as it comes up to us, without passing upon the question.

I. It is contended that the Act of March 22, 1915, is unconstitutional for two reasons: (a) The title thereof is not expressive of the contents of the act, and (b) it increases the compensation of clerks of the circuit courts during the terms for which they are elected. It is plain that if either contention be found tenable this case must be reversed.

The constitutional provision first above invoked is a familiar one and, stated in substance, it prohibits the passing of any bill containing more than one subject, "which shall be clearly expressed in its title." [Constitution, sec. 28, art. 4.] So much of the title of **Salary.** the act as the contention made renders pertinent, reads thus: "An act changing the method of payment of salaries of clerks of circuit courts," etc.

Confining the contention to yet narrower limits, it is urged by defendants that the act does not in fact change the method of payment of the *salaries of circuit clerks,* because before the act passed they had no *salaries,* but what it actually does is to change their compensation; that is, concretely applied to the facts here, it raises the amount of *compensation* of circuit clerks, and therefore, since before the passage of this act their pay was compensation

and not salary, the use of the latter word in the title of the act is misleading.

It is obvious that counsel seek to draw a distinction between remuneration by fees, which they somewhat arbitrarily denominate "compensation," and payment in cash in regular monthly installments, which they denominate "salary." Therefore they urge, since under the law existing when the Act of 1915 was passed the remuneration paid to circuit clerks was not *salary* but was *compensation*, that is, fees, the use of the word *salary* was not properly descriptive of the contents and purposes of the latter act.

Obviously, if the Legislature had in mind the maximum sums fixed by statute (Laws 1913, p. 702), which could be annually retained by circuit clerks, then such remuneration so fixed could properly and without misnomer be called a *salary*. For we have had this word salary defined for us in this State thus: " 'A periodical allowance made as compensation to a person for his official or professional services or for his regular work.' [Standard Dict.] 'Salary is regarded as a *per annum* compensation.' " [Henderson v. Koenig, 168 Mo. 1. c. 367.] The Legislature manifestly held in mind, as it had the right in law to do, that the statutory provision existing when relator entered upon his current term of office was, considered as a whole, *"per annum* compensation." So, the title was not misleading so far as concerns this specific contention.

Moreover, the language of the Constitution includes both fees and salary under the comprehensive term compensation as witness this language: "The compensation or fees of no state, county or municipal officer shall be increased during his term of office." [Sec. 8, art. 14, Constitution.] Clearly fees are not salary; so if the provision of the section quoted supra includes salary at all—and no one would be so bold as to deny that it does—then the word compensation is the generic term and includes as used in the above provision of the Constitution, salary, fees, pay, remuneration for official services performed, in whatever form or manner, or at whatsoever periods the

same may be paid. As stated, no one will deny that the word "compensation," as used in the above provision, includes salary. We have time and again tacitly so ruled by considering without question cases in which that form of remuneration which we call salary was alone involved. [State ex rel. Rumbold v. Gordon, 238 Mo. 168.] It is clear that the makers of our Constitution used the word compensation as the comprehensive generic term, and thereafter added the word "fees" as an inclusive and explanatory second-thought, although remuneration by fees was already included by the use of the term compensation, as witness the punctuation, which lacks the comma after the word *compensation.*

Counsel for defendants ask us to rule whether the title to the Act of 1915, apposite parts of which we quote above, fairly informed the members of the Legislature that they were considering a bill which changed the compensation of the circuit clerks in this State, and counsel argue from the question they thus formulate that a lawmaker might have no objections to changing the method of payment of an officer's salary, but yet entertain serious objections to an increase of such officer's compensation during the term for which he was elected. It is fairly obvious that this specific contention begs the other constitutional question, which we have found to be lodged in the case. For if the effect of the act is to *change the compensation* by raising it during the term for which relator was elected to the office of clerk of the circuit court, then of course, by reason of the other contention of unconstitutionality made, the act is wholly void as to relator and as to all incumbents of these offices standing in like position with relator. But the Legislature must evidently have believed, and relator urges that view on us, that the act did not increase the compensation of the several circuit clerks, but that what it does, and all that it does, is to change the method of paying such compensation from the fee system to a fixed monthly salary. From this it will be seen that this contention is well taken, according as we shall conclude that the other one is likewise well taken, and there is

therefore so far as this specific contention goes, but one question in the case.

II. Coming to the second and decisive constitutional question reserved we have to ascertain and rule whether the act here under discussion did increase the compensation of relator and of other circuit clerks similarly situated during their terms.

Increase of Clerk's Salary.

It is admitted that Callaway County has a population of between 25,000 and 30,000. Relator qualified as circuit clerk in his current term on the first day of January, 1915. When he so qualified his compensation was fixed upon a fee basis and he was allowed to retain the fixed sum of $2,-000 from his fees as clerk of the circuit court if he earned so much; the sum so allowed to be retained being then governed by the below statute, to-wit:

"The aggregate amount of fees that any clerk under articles 2 and 3 of this chapter shall be allowed to retain for any one year's services shall not in any case exceed the amount hereinafter set out. . . ' In all counties having a population of twenty-five thousand and less than thirty thousand persons, the clerks shall be permitted to retain two thousand dollars for themselves, and be allowed to pay for deputies or assistants not exceeding fifteen hundred dollars.'' [Laws 1913, p. 702.]

Under the act here attacked relator's compensation was commuted to the sum of $2000 per annum in cash, payable by the county monthly in lieu of all fees, which were thereafter payable to the county, pursuant to the below provision, to wit:

"The clerks of the circuit courts of this State shall receive for their services, annually, the following sums: In counties having a population of 7000 persons and less than 10,000 persons, the sum of eleven hundred dollars; in counties having a population of 10,000 persons and less than 15,000 persons, the sum of twelve hundred and fifty dollars; in counties having a population of 15,000 persons and less than 20,000 persons, the sum of sixteen hundred dollars; in counties having a population of 20,000 persons and less than 25,000 persons, the sum of nineteen hundred

and fifty dollars; in counties having a population of 25,-000 persons and less than 30,000 persons, the sum of two thousand dollars.'' [Laws 1915, p. 378.]

While defendants concede that the amount of cash salary relator is entitled to receive under the provisions of the Act of 1915, does not exceed but exactly equals the amount he was entitled to retain under the act of 1913, out of his fees collected, yet they contend that unless the fees which he actually *earned and collected* amount each year to a sum equal to the $2000 yearly cash salary, the provisions of the Act of 1915 are unconstitutional, for that they in fact bring about an increase in his compensation during the currency of a given term.

In passing we note that it seems to be hinted that relator having already served one full term beginning January 1, 1911, and having been re-elected to a second term, is bound during such second term to content himself with the salary fixed for his office when he was first elected thereto for his first term. It is so plain that this view is wrong that we but pause to state the contention and content us with so characterizing it. Each official term stands by itself. The constitutional provision forbidding an increase or decrease of compensation during a term of office has reference to the period fixed as a term by statute only, and in no wise refers to the individual who may incidentally happen to be the incumbent for more than one term.

So, while it is conceded as the figures indicate, that there has been no increase in the stated amount fixed by law as the pay of a circuit clerk during the current term of this relator, yet it is urged there has been an increase in fact, unless the fees collected each year amount to as much as $2000, regardless of the statutory provision existing when relator took office of retaining as his annual compensation $2000 out of the fees earned and collected.

The Act of 1915 (Sec. 6, p. 380, Laws 1915) went into effect on the 1st day of July, 1915. This instant action seeks to compel payment of relator's salary for the month of August, 1915. There was no possibility of making proof, and none was made, as to what the compensation of relator was for any one year of his current term, for

only six months of that term had elapsed when the law took effect, and only eight months thereof had elapsed when this action was begun. We could well dispose of defendants' contention on the ground that even if it be as a matter of law well taken, there is yet no proof of the fact on which it is bottomed and so they must lose. But such a view would be narrow and unprofitable and but put off the day of certain adjudication without definitely settling the important questions involved. As persuasive evidence defendants did put in proof that in a prior term of office just preceding the current one, relator collected fees which he retained for his services as circuit clerk in the following sums for the years named: For the year 1911, the sum of $1056.42; for the year 1912, the sum of $1507.76; for the year 1913, the sum of $1689.04, and for the year 1914, the sum of $1840.84. These figures, competent only because admitted by the pleadings, prove but little. The best that may be said of them is that they are mildly persuasive. For, since all of us have been lawyers in active practice, we judicially notice the delays incident under our practice, statutes and system of appellate review between the earning of fees by a circuit clerk and his actual collection thereof. Payments of costs, which include the fees of circuit clerks, are delayed in a large number of cases till an appellate court has passed finally upon the case. Hence it is (and the annually increasing collections of relator above set forth clearly illustrate this fact), that the yearly sums collected by a circuit clerk increase annually till a maximum is reached; such increase being due to the belated coming in of fees earned, but not collected, till after the determination of appeals. Sometimes we know fees are not actually collected by a circuit clerk till years after he has gone out of office, though actually earned by him when he was an officer. We have held that he could apply an excess collected over the statutory limit in one year to a deficiency under that limit for another year (Allen v. Cowan, 96 Mo. 193), which holding accentuates the thought that the Legislature was not far wrong in denominating as salary the annual statutory stipend of a circuit clerk.

The Act of 1915 putting circuit clerks upon a salary basis, was, it is plain, designedly enacted so that the several salaries fixed thereby and made payable monthly in cash should exactly equal the amounts fixed by statute in 1913, as the amounts which could be retained by each circuit clerk as his annual compensation out of the fees he earned. As we gather the position and contention of defendants, they concede that in all cases and counties wherein the fees actually earned by the several circuit clerks amount in any one year to the sum fixed as their salaries by the Act of 1915, the act is constitutional. At least, if defendants do not concede this, the logic of their contention concedes it for them. The result of such a construction is that some circuit clerks in some counties which contain from twenty-five to thirty thousand population would get the salary fixed by the Act of 1915 some years, and get fees other years, and it would be impossible ever to tell what method of payment should be employed, or how much compensation the circuit clerk was to get till the end of the year. Likewise in some of the counties these officers would be paid salaries and in others still remain upon a fee basis of compensation. Such results could not have been in legislative contemplation; since two cardinal canons of construction upon the attack of unconstitutionality confront us: One of these is that we must be convinced beyond a reasonable doubt that an act is void under the Constitution before we are warranted in so declaring it (State v. Baskowitz, 250 Mo. 82); the other is that where one construction of a statute would render the act absurd and unenforceable and the other the converse, we are required to adopt the latter rather than the former. [State ex rel. v. Gordon, 266 Mo. l. c. 411.]

Our attention is directed toward the late case of Folk v. St. Louis, 250 Mo. 116, as furnishing authority for the position defendants take here. We do not think the Folk case is at all persuasive. In a way that case is the antithesis of this. There an act was passed during a certain current term increasing the salary of the circuit attorney of the City of St. Louis to $5000 per year. The acts in force when he took office gave this official $4000 payable by

the city and $350 payable by the State, a total fixed salary falling short of the amount fixed by the act attacked. It was urged that as other services were performed wherein the services performed were worth more than the difference, there was in fact no increase. We held against this contention. So that case furnishes no authority for this.

We are constrained therefore to hold that the Act of 1913 (Laws 1913, p. 702) fixed the basic compensation for clerks of the circuit courts and that the amounts severally set forth in that act as the sums in fees which such clerks could each retain as their several compensations, constitute the salaries from which we are to determine whether the Act of 1915 increases such compensation. We have seen that the amounts are the same in counties of the class here in question and conclude that as to the relator there has been no increase and the act is constitutional. Let the judgment of the learned judge *nisi* be affirmed. All concur.