STATE OF MISSOURI, at the Relation of GUY WEBB, Clerk of the Springfield Court of Appeals, Relator, v. E. L. PIGG, Comptroller of the Department of Revenue of the State of Missouri, Respondent, No. 43005—249 S. W. (2d) 435.

Court en Banc, June 9, 1952.

*Stone & Reid* and *A. P. Stone, Jr.,* for relator.

134

*J. E. Taylor,* Attorney General, and *Robert R. Welborn,* Assistant Attorney General, for respondent.

DALTON, J.—This is an original proceeding in mandamus. Relator, the Clerk of the Springfield Court of Appeals, seeks to compel the Comptroller of the Department of Revenue to approve and certify for payment the unpaid remainder of relator's monthly salary claims, to wit, the additional sum of $75 per month for each and every month during the period from July 1, 1951 to December 31, 1951, inclusive, which additional sums are alleged to be due by reason of an increase in relator's salary, as ordered by the Judges of the Springfield Court of Appeals and authorized by Laws 1949, p. 236, now Section 483.240 RSMo 1949.

Respondent, acting upon an opinion of the Attorney General, has refused to approve relator's claims for such increase on the ground that relator is a "state officer" within the meaning of Section 13, Article VII, Constitution of Missouri, 1945; and that his compensation may not be increased during his term of office. The parties agree that the cause turns on whether or not relator is a "state officer" within the meaning of the above constitutional provision.

The facts are not in dispute. On July 1, 1946, relator was reappointed by the Springfield Court of Appeals as its clerk for a term of six years. Section 26, Article V, Constitution of Missouri, 1945; Laws 1945, p. 660. His salary was fixed by the Judges of said court at the sum of $3600 per year, the maximum then permitted by law. Laws 1945, p. 660. Thereafter, the maximum salary payable to relator, as such clerk, was increased to $4500 [437] per year. Laws 1949, p. 236, now Section 483.240 RSMo 1949, effective October 14, 1949. Laws 1949, pp. 647, 648. On August 19, 1949, the Judges of the Springfield Court of Appeals fixed relator's salary, as clerk of said court, at $4500 per year, effective from and after October 14, 1949.

In regular and approved form, from and after October 14, 1949, relator has made claim for salary at the increased rate and said claims have been approved and certified as correct by the Presiding Judge of the Springfield Court of Appeals. Sections 33.100 and 483.240 (all references are to RSMo 1949 unless otherwise specified). Such salary claims submitted at the rate of $375 per month have been rejected and disapproved by respondent, who, without relator's consent, has changed, reduced and approved said salary claims for $300 per month.

Funds for the payment of relator's salary at the increased rate, to wit, at $375 per month from and after October 14, 1949, have been duly appropriated. (65th General Assembly) Laws 1949, p. 56, Sec. 4.110; Laws 1949, p. 210, Sec. 10.690; 66th General Assembly, House Bill No. 5, Sec. 4.290, pp. 26, 27. Unencumbered funds are presently available for the payment of the balance of relator's salary claims for the period from July 1, 1951 to December 31, 1951, inclusive. Appropriations for payment of the increased salary prior to July 1, 1951 have expired. Section 28, Article IV, Constitution of Missouri, 1945.

Relator's position is that, "in law and in fact, he is a mere ministerial officer of the Springfield Court of Appeals, the amanuensis of the court, and 'the arm of the court', by whom he is appointed, supervised, directed and controlled, and to whom he is responsible and accountable; that, as evidenced by the Missouri statutes cited in relator's petition, relator's duties are largely clerical in nature and are altogether subject to the court's supervision, direction and control; that relator is invested with none of the sovereign power of government, to be exercised by him for the benefit of the public,

independently and without control of a superior power other than the law, itself; and that, under this recognized definition and test, relator is not a 'state officer.' ''

Section 13, Article VII of the Constitution of Missouri, 1945, provides: ''The compensation of state, county and municipal officers shall not be increased during the term of office; nor shall the term of any officer be extended.''

In Folk v. City of St. Louis, 250 Mo. 116, 135, 157 S.W. 71, this court considered the purpose of this particular constitutional provision and said: ''It was to prevent persons while possessed of the prestige and influence of official power from using that power for their own advantage that the framers of our organic law ordained that salaries of public officers should not be increased during the terms of the persons holding such offices.''

This court has questioned the possibility of specifically defining the words, ''public office'', ''public officer'', or ''state officer'', but it has determined each case involving the matter in question in view of the particular facts presented and the applicable statutes and constitutional provisions. Among the matters taken into consideration are the duties to be performed, the method of performance, the end to be attained, the powers granted and, generally, the surrounding circumstances. These circumstances include tenure, oath, bond, official designation, compensation and the dignity of the position in question, but no particular fact or circumstance is considered to be conclusive. State ex inf. McKittrick v. Bode, 342 Mo. 162, 113 S.W. (2d) 805, 806; State ex rel. Scobee v. Meriwether, 355 Mo. 1217, 200 S.W. (2d) 340, 341.

In the case of State ex rel. Walker v. Bus, 135 Mo. 325, 331, 36 S.W. 636, the court said: ''A public office is defined to be 'the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of. the sovereign functions of the government, to be exercised by him for the benefit of the public.' Mechem, Public Offices, 1. The individual who is invested with the authority and is required to perform [438] the duties is a public officer.'' And see State ex rel. Zevely v. Hackmann, 300 Mo. 59, 254 S. W. 53, 55; State ex inf. McKittrick v. Whittle, 333 Mo. 705, 63 S.W. (2d) 100, 102. This definition has been somewhat modified by the subsequent decisions. of this court.

The parties to this action in effect concede that, under the more recent decisions of this court, a different test has been formulated and applied in reaching a conclusion as to whether or not a particular official is a ''state officer'' within the meaning of the quoted constitutional provision. In order to be considered a ''state officer'' within the purpose and meaning of said constitutional provision, the official

in question must have been delegated a portion of the sovereign power of government to be exercised for the benefit of the public and such delegation of sovereign power must be "substantial and independently exercised with some continuity and without control of a superior power other than the law." Kirby v. Nolte, 349 Mo. 1015, 164 S.W. (2d) 1, 8; State ex rel. Scobee v. Meriwether, supra (200 S.W. (2d) 340, 341); State ex inf. McKittrick v. Bode, 342 Mo. 162, 113 S.W. (2d) 805, 807; State ex rel. Pickett v. Truman, 333 Mo. 1018, 64 S.W. (2d) 105, 106.

In considering the meaning of the term "sovereign power", and as illustrative thereof, this court has repeatedly quoted from the case of State ex rel. Landis v. Board of Commissioners of Butler County, 95 Ohio St. 157, 115 N.E. 919, 920, as follows: "If specific statutory and independent duties are imposed upon an appointee in relation to the exercise of the police powers of the state, if the appointee is invested with independent power in the disposition of public property or with power to incur financial obligations upon the part of the county or state, if he is empowered to act in those multitudinous cases involving business or political dealings between individuals and the public, wherein the latter must necessarily act through an official agency, then such functions are a part of the sovereignty of the state." State ex rel. Pickett v. Truman, supra (64 S.W. (2d) 105, 106); State ex rel. Scobee v. Meriwether, supra (200 S.W. (2d) 340, 341).

 Whether or not relator has been delegated any portion of the sovereign functions of government within the aforesaid definition and the extent to which he has been invested with such "sovereign power" to be exercised by him for the benefit of the public, *independently* and without control of a superior power other than the law, can be ascertained only by a careful review of the applicable statutory and constitutional provisions.

The office in question is one recognized by the Constitution of this state. Section 26, Article V of the Constitution of Missouri, 1945, provides that "appellate and probate courts shall appoint their own clerks." Such a clerk is a sworn officer. Section 11, Article VII, of the Constitution provides that, "Before taking office, all civil and military officers *in this state* shall take and subscribe an oath or affirmation to support the Constitution of the United States and of this state, and to demean themselves faithfully in office." (Italics ours).

Relator has not been issued a commission by the Governor of the state, but whether relator is a "state officer" within the meaning of Section 13, Article VII is the matter for decision here, and not whether relator is entitled to a commission by reason of Section 5, Article IV, Constitution of Missouri, 1945. The mere fact of relator's failure to receive a commission is not decisive of the issues presented here.

Many sections of Chapter 483 RSMo 1949 applicable to clerks of courts of record are apparently applicable to relator. The sections referred to as applicable include Section 483.025, providing for the giving of a bond and fixing its conditions (and see 483.030); Section 483.055, with reference to preserving the seal and other property belonging to his office, and keeping a correct account thereof; Section 483.065, with reference to where he shall keep his office and records; Section 483.075, with reference to recording judgments and orders, attesting process and keeping accounts; Section 511.630 and Section 483.130, [439] with reference to filing papers and making up the rolls of the judgments rendered; Section 483.135, with reference to labeling and re-indexing files; Sections 483.085 and 483.090, with reference to the preparation of dockets; Section 483.150, with reference to keeping records of judgments and fines, penalties and forfeiture; Section 483.240, with reference to the appointment of a deputy and clerical assistants; Sections 483.500 and 483.540, with reference to the allowance and collection of fees; Sections 483.510 and 483.515, with reference to records of fees collected, accounting therefor and paying the same over to the state treasurer; and Section 483.210, with reference to the delivery of "all records, books, papers, files, seals, and other things belonging to his office to his successor as soon as appointed."

Numerous sections of Chapter 477, with reference to the Supreme Court and Court of Appeals are also applicable to relator. These include Section 477.030 (2), with reference to filing and handling of opinions of the court; Section 477.080 (2), with reference to the forwarding or receiving cases transferred from other appellate courts; Section 477.310, with reference to furnishing copies of briefs and opinions to the official reporter of the court; and Section 477.320, providing penalties for failure to make out, certify and transmit such copies.

Relator calls our attention particularly to the fact that in Section 477.330 the clerk is referred to as an officer of the court; that relator, as such officer of the court, holds his office "during the pleasure of said court" (Section 477.210); and that the court directs and controls the work of the clerk, as provided by Sections 483.065, 483.090, 483.130, 483.135, 483.140, 483.145, 483.170, 477.080, 477.210 and 477.330. And see Section 33.100 and 105.150.

Section 483.140 is particularly relied upon by relator. It provides: "It shall be the special duty of every judge of a court of record to examine into and superintend the manner in which the rolls and records of the court are made up and kept; to prescribe rules that will procure uniformity, regularity and accuracy in the transaction of the business of the court; to require that the return, trial, judgment and execution dockets, and all indexes to the records, be correctly made out at the proper time—that the papers be filed and the entries

made, and that the duties of the clerks be performed according to law; and if any clerk fail to comply with the law, the court shall proceed against him as for a misdemeanor." Section 483.240, applicable to clerks and deputies of appellate courts also provides that such "officers and deputies shall present their accounts to the state comptroller, approved by the presiding judge or one of the judges of their respective courts." Other statutes referred to include Section 136.060 under which it appears that relator has been deputized by the State Collector of Revenue in the handling of state funds.

Respondent relies particularly upon a statement contained in the opinion in State ex rel. Pickett v. Truman, supra (64 S.W. (2d) 105, 106), as follows: "Numerous criteria, such as (1) the giving of a bond for faithful performance of the service required, (2) definite duties imposed by law involving the exercise of some portion of the sovereign power, (3) continuing and permanent nature of the duties enjoined, and (4) right of successor to the powers, duties and emoluments, have been resorted to in determining whether a person is an officer, although no single one is in every case conclusive. 46 C.J. p. 928, § 19, n. 1; 53 A.L.R. p. 595." This statement has been repeated in State ex rel. Scobee v. Meriwether, supra (200 S.W. (2d) 340, 341). And see 67 C.J.S., Officers, Sections 2 and 5, pp. 101, 109.

Respondent says that relator is required to give, and has given and filed a bond; that the numerous statutory duties imposed upon relator "are certainly continuing and permanent in their nature"; that "his successor will be entitled to all of the powers, duties and emoluments of the office"; and that relator has numerous statutory duties and responsibilities, which he exercises and discharges independently of the control of the court. Respondent refers to Sections 483.075, 483.510 and other statutory provisions and says that "the duty of the clerk to receive and account for [440] the fees earned by his office * * * is the exercise of such a sovereign function as causes the relator to be an officer within the meaning of the constitutional provision." Respondent insists that "relator continues to receive and collect fees of his office as the Clerk of the Springfield Court of Appeals"; that "being deputized by the State Collector of Revenue is merely an administrative matter in the handling of state funds" (Section 136.060); and that in the case of State ex rel. Pickett v. Truman, supra, "this court recognized that the handling of public money is a function which is a part of sovereignty."

Respondent further says that "the clerk is required to issue and attest process and affix the seal of his office thereto"; and that "this duty is exercised independently of the control of the court." Respondent concedes that in many respects the duties of the clerks of all courts are ministerial and clerical in nature and that this is true of the position held by relator. Finally, respondent insists that relator does have important functions relating to the sovereign au-

thority; that such functions are exercised independently, as stated; and that "the relator's authentication of orders and judgments of the court and the use of an official seal and the attesting thereto and relator's handling of public funds is a sufficient exercise of sovereign authority, particularly when considered with other usual indicia of office, which are present in relator's case, and the dignity and importance of the position," to make relator a "state officer" within the meaning of the said constitutional provision prohibiting an increase in compensation during his current term.

Respondent cites the following cases involving Section 8, Article XIV Constitution of 1875, but in them there is *little or no discussion of the nature of the sovereign power exercised* by the officials involved: Clerk of the Circuit Court (State ex rel. Emmons v. Farmer et al., 271 Mo. 306, 196 S.W. 1106; State ex rel. Moss v. Hamilton, 303 Mo. 302, 260 S.W. 466); Clerk of the County Court (Callaway County v. Henderson, 119 Mo. 32, 24 S.W. 437); Assessor for the City of St. Louis (State ex rel. Stevenson v. Smith, 87 Mo. 158); County Superintendent of public schools (State ex rel. Harvey v. Linville, 318 Mo. 698, 300 S.W. 1066); Circuit Attorney for the City of St. Louis (Folk v. City of St. Louis, supra, (157 S.W. 71) and State ex rel. Harvey v. Sheehan, 269 Mo. 421, 190 S.W. 864); City Collector (Denneny v. Silvey, 302 Mo. 665, 259 S.W. 422); Probate Judge (Greene County v. Lydy, 263 Mo. 77, 172 S.W. 376); Police detective of metropolitan police force (State ex rel. Truman v. Jost, 269 Mo. 248, 191 S.W. 38); County Sheriff (State ex rel. Selleck v. Gordon, 254 Mo. 471, 162 S.W. 629); and Treasurer of the City of St. Louis (State ex rel. Dwyer v. Nolte, 351 Mo. 271, 172 S.W. (2d) 854).

In the case of State ex rel. Truman v. Jost, supra, the court held the Kansas City police detective in question was not only a municipal officer, but also a "state officer" within the meaning of the constitutional provision denying an increase in compensation, since he could exercise authority in any part of the state. The word "state officer", as used in Article 6, Section 12 of the Constitution of 1875 have, also, been construed to refer only to officers whose official duties and functions were co-extensive with boundaries of the State. State ex rel. Holmes v. Dillon, 90 Mo. 229, 2 S.W. 417; Murphy v. Hurlbut Undertaking & Embalming Co., 346 Mo. 405, 142 S.W. (2d) 449.

Reference to the statutes applicable to clerks of circuit courts will show that the duties imposed on such clerks are in many respects quite different in character and much more numerous than those imposed on clerks of appellate courts. This court has often held that circuit court clerks are, in many respects, mere ministerial officers. State ex rel. Henson v. Sheppard, 192 Mo. 497, 513, 91 S.W. 477; State ex rel. Caldwell v. Cockrell, 280 Mo. 269, 217 S.W. 524, 530, 531; State ex rel. and to the Use of City of St. Louis v. Priest, 348 Mo. 37, 152 S.W. (2d) 109, 112; Cannon v. Nikles, 235 Mo. App. 1094, 151 S.W.

(2d) 472, 475. In State ex rel. Emmons v. Farmer, supra, and State ex rel. Moss v. Hamilton, supra, cited by respondent, there was no judicial determination that a circuit clerk was in [441] fact a "state officer" or a "public officer" within the meaning of the constitutional provision in question. The question was not put in issue, it was assumed and not expressly ruled.

The portion of the opinion in State ex rel. Pickett v. Truman, supra, upon which respondent particularly relies, fails to include a factor, which this court has particularly emphasized, and which respondent in his suggestions in opposition to the petition for the writ of mandamus has recognized and conceded, as follows: "The ultimate test appears to be whether or not, to the person in question, there has been delegated some substantial part of the sovereign power, to be '*independently* exercised with some continuity and without control of a superior power other than the law.' Kirby v. Nolte, supra, 164 S.W. (2d) l.c. 8."

In recent opinions of this court special emphasis has been placed upon whether the particular individual in question performs his duties independently and without control of a superior power other than the law, that is, whether he is endowed by law with the power and authority to use his own judgment and discretion in discharging the sovereign functions of government which have been vested in him by statute and which functions are to be exercised by him for the benefit of the public. A careful review of all the statutory and constitutional provisions relied upon in connection with the application of the established test to determine whether relator is a "state officer" or a "public officer" within the meaning of Section 13, Article VII, Constitution of Missouri, 1945, convinces us that relator is not such an officer.

Relator is an officer of the court. Section 477.210 and 477.330. He is no doubt an officer "in this state" within the meaning of Section 11, Article VII, supra, but in the discharge of his official statutory duties he is subject to the supervision, direction and control of the court by whom he is appointed and whom he serves. Such control is no doubt necessary for the proper and effective operation of the court. In any event, the authority and responsibility vested in the court with reference to superintending, directing and controlling the clerk in the discharge of his official duties is clearly recognized in the numerous statutes to which reference has been made. While relator has been vested with some of the recognized sovereign functions of government to be exercised by him for the benefit of the public, yet we think it is clear that in the discharge of substantially all of the duties and responsibilities, which have been imposed upon him by law, he does not act independently, or without the control of a superior power other than the law which created the office and specified the duties to be discharged. We hold that he is neither a "state officer",

nor a "public officer" within the purpose and meaning of Section 13, Article VII, supra.

In view of the conclusions we have reached, supra, it will not be necessary to determine whether relator holds his office for a fixed and definite term under Section 483.240, or only "during the pleasure" of the court under Section 477.210, so that he can be said to have no definite term and, therefore, that Section 13, Article VII, supra, does not apply for that reason. State ex rel. Kane v. Johnson, 123 Mo. 43, 48, 27 S.W. 399; State ex rel. Rumbold v. Gordon, 238 Mo. 168, 180, 142 S.W. 315; State ex rel. Hueller v. Thompson, 316 Mo. 272, 289 S.W. 338, 340.

For the reasons heretofore stated, our alternative writ of mandamus is made peremptory. All concur.