JOSEPH J. FEUCHTER v. THE CITY OF ST. LOUIS, a Municipal Corporation, ARTHUR C. MYERS, Director of Streets and Sewers of the City of St. Louis, LOUIS NOLTE, Comptroller of the City of St. Louis, LUTHER ELY SMITH, PAUL J. KAVENEY, and JOSEPH HOLLAND, Being the Members of and Constituting the Civil Service Commission of The City of St. Louis, Appellants.—No. 40600.—210 S. W. (2d) 21.

Division One, March 8, 1948.

Rehearing Denied, April 12, 1948.

*George L. Stemmler* and *Charles J. Dolan* for appellants.

*Harold C. Hanke* for respondent.

618

HYDE, J.—This is an action for reinstatement of plaintiff to the class of position in Civil Service of the City of St. Louis that he held prior to entering the United States Army in 1942, for the pay of such position from the time he applied for reinstatement in 1946 and for damages. The Court found for plaintiff and entered judgment ordering his reinstatement and payment of his salary in the amount of $4416.00 and for $7500.00 damages. Defendants have appealed.

Plaintiff's claim of right to reinstatement is based on Section 11 of Ordinance 42437 (approved Sept. 15, 1942), in effect in the City when plaintiff entered the army, which was as follows: "*Permanent employees* or employees in a working test period in the classified service who have left the City Service, or who shall do so, during the time of war or emergency, in order to enter the armed services of the United States, or to accept a civil position in furtherance of the war effort either at the urgent request of a governmental agency or under the terms of any legal provision for drafting manpower, now in effect, or hereafter enacted, *shall be granted leaves of absence without pay to extend for sixty days beyond the date of termination of such military or emergency service.* Upon the expiration of such leave of absence, *the employee shall be reinstated to the class of position he occupied at the time the leave was granted.*

Failure of an employee to report for duty promptly at the expiration of the leave of absence shall be just cause for dismissal." (Our italics.) This ordinance was enacted to conform to a national policy of restoring those entering the armed forces during the war emergency to their previous positions and status, both in public employment and private industry, as provided in an Act of Congress. [U. S. C. A. Title 50, Sec. 308.]

Defendants say: "The sole issue in this case is whether or not respondent was a permanent employee of the City of St. Louis when he applied for leave of absence for the duration of the war on the ground that he was being inducted into the army." Defendants contend that plaintiff was only a temporary employee and not entitled to the benefit of the 1942 ordinance.

Plaintiff was appointed an engineer in the Department of Streets and Sewers of the City in May 1933, and classified PEC III. (Public Engineer Civil, Class three.) His salary was $230.00 per month. At that time, the City did not have a Civil Service System but its charter did provide for classified and unclassified service administered by an Efficiency Board, which was required to give open competitive examinations for positions in the classified service. (Article XVIII Charter of St. Louis.) Plaintiff was actually a mechanical engineer but the head of the Department wanted to use him as an efficiency engineer and unsuccessfully attempted to get the Board of Aldermen to create such a position. Thereafter, in July 1933, the Efficiency Board made the following order:

"Whereas, Joseph J. Feuchter is now an employee of the office of the Director of Streets and Sewers, and, Whereas, at the time of his appointment to a position in said office, there was no position authorized by ordinance to which he could be appointed, and he was therefore appointed as Civil Engineer PEC III pending the creation of a position calling for his particular and peculiar qualifications, and, Whereas, the work being done by the said Joseph J. Feuchter is of a character requiring exceptional scientific, mechanical, professional and educational qualifications within the meaning of Section 3(g) [23] of Article VIII of the Charter of the City of St. Louis;

"Now, Therefore, Be It Unanimously Resolved by the Efficiency Board of the City of St. Louis that the said Joseph J. Feuchter be and he is hereby removed from the classified service and placed in the unclassified service, notwithstanding his present status as Civil Engineer PEC III, it being the intent and purpose of this resolution that it shall apply to the said Joseph J. Feuchter only and not for the purpose of removing from the classified service the above stated position of Civil Engineer PEC III."

The authority under which the Board purported to act was Section 3(1) (g) of Charter Article XVIII (Sec. 3(1) specified, in sub-

sections a to f, the offices in the unclassified service such as elective officers, heads of departments, members of boards, etc.) as follows:

"In addition to the above, on the unanimous vote of the board, there may be included in the unclassified service such other offices or positions requiring exceptional scientific, mechanical, professional, or educational qualifications as may be ordered by rule of the board."

Thereafter, in December 1933, plaintiff's title was changed to efficiency engineer and his salary raised to $285.55; but on May 1, 1934 he was demoted to PEC III and his salary reduced to $235.00. Plaintiff said that during 1935 or 1936 he took and passed an examination for Engineer PEC III and this was confirmed by the examiner who said he gave the examination. There was no record of this in the files of the Efficiency Board but their records were not very complete. On April 1, 1936 he was appointed Superintendent of Maintenance and Construction of the Traffic Section, at $250.00, which was also a position in the classified service designated as ASMCT and shown as exempt from examinations. In September 1937, plaintiff was appointed Traffic Engineer, shown on the records as PECT with a salary of $375.00. It was further shown that there was a "T" behind this entry and the present Director of Personnel said "that meant 'temporary' to us." However, plaintiff held this position until he entered the army in November 1942. It had been held by only two other men since 1926; one from 1926 to 1930, and the other from 1930 to 1937. The Traffic Engineer was the head of the Traffic Section in the Department of Streets and Sewers and had very important duties in connection with traffic regulations, drivers' licenses and traffic safety devices.

In September 1941, an amendment was adopted to Article XVIII of the Charter providing for a complete civil service system. Section 12 thereof was as follows: "Every person who, when this Article takes effect, is legally occupying, by regular appointment thereto, a position placed by this Article in the classified service, shall be entitled to continue to occupy such position, without further examination for such employment, and shall become subject to the provisions relating to service rating, with the same effect as though he had been appointed to the position occupied, under the provisions of this Article."

The position of Traffic Engineer was a position so placed in the classified service. However, defendants argue that plaintiff was not legally occupying that position because they claim he was only a temporary employee. They point to Section 4(e) of Section XVIII which limited the Efficiency Board to making rules "for temporary employment for not exceeding sixty days, without examination, in the absence of an eligible list." They say that plaintiff could not have been legally occupying the position of Traffic Engineer at the time the Charter Amendment was adopted because he was holding it after the

622

expiration of sixty days from the date of his appointment to it, in violation of the above quoted Charter provision. The rules of the Board are not in the record but we note that Section 4 authorized "reasonable regulations concerning promotion" and also "for transfer from a position to a similar position in the same class and grade."

In November 1942, plaintiff applied for and was granted military leave for the duration of the war. Leaves of absence could not be made for any other purpose [24] for more than one year. [Ordinance 43677, amending Ordinance 42437.] In the army plaintiff specialized in traffic work and rose from private to Major. In October 1945, while he was still in the army, he received a letter from the Director of Personnel, which contained provisions pertaining to granting of military leave and privileges granted returning veterans, stating that at the time he entered the armed forces he was employed as Traffic Engineer, and notifying him that he should contact the Department of Personnel immediately upon his release from service and if he desired reinstatement to apply for it within sixty days thereafter. Plaintiff did make timely application for reinstatement. However, while he was in the army, an examination had been held for the position of Traffic Engineer, which was passed by one applicant who had been appointed and was still serving. Plaintiff was not reinstated in that position because of this appointment. However, the Director of Personnel wrote plaintiff's attorney: "Mr. Feuchter is entitled to reinstatement to the same class of position as he occupied on a permanent basis. This appears to be from the best information possible a position of the III level. Apparently, since Mr. Feuchter is a Mechanical Engineer, it is likely that his former position of Civil Engineer, PEC III, was actually one of Mechanical Engineer III. Since the position formerly held by Mr. Feuchter on a permanent basis has been abolished in the Department of Streets and Sewers, the only course remaining for this Department would be to certify Mr. Feuchter for appointment to the first opening occurring in a position of Mechanical Engineer III."

The Court found that the class of position, which plaintiff occupied at the time his military leave of absence was granted was Engineer III. The Court also found that he took an examination, in 1935 or 1936, which the evidence showed was for an engineer's position and that he passed this examination. The Court's conclusions of law were that "on September 15, 1941, plaintiff was legally occupying, by regular appointment thereto, the position of Traffic Engineer, placed by the new Article in the classified service and was therefore entitled to continue to occupy said position without further examination for such employment"; that "plaintiff was a permanent employee of defendant City and was granted a military leave of absence to enter the armed service of the United States without pay"; that "the same class of position he occupied at the time said leave

was granted is Engineer III"; and that Ordinance 42437 "is mandatory and plaintiff is therefore entitled to reinstatement to a position as Engineer III as of the date he applied for said reinstatement."

We think the evidence warranted these findings and conclusions. The 1933 order of the efficiency Board did not remove the position of engineer PEC III from the classified service; and, whatever plaintiff's status may have been under it, there is sufficient evidence to show that plaintiff attained the classification of PEC III, at least by 1936, when he passed the examination for it. There is nothing in the record to show that there were any rules or regulations of the Board which would cause him to lose it by thereafter also serving as the head of the Traffic Section under the designation of Traffic Engineer; or that an engineer PEC III could not legally serve as Traffic Engineer. It was shown that both of the men who held this position before him were likewise promoted or transferred to it without examinations. We do not think it appears that plaintiff was illegally occupying this position, because of being only a temporary employee. [As to the construction of the word "temporary" in the Federal Act see Parbilla v. Velarde, 67 Fed. Supp. 260; Rosario v. Department of Labor of Puerto Rico, 68 Fed. Supp. 1.] There were no permanent employees under the Efficiency Board because Section 7 of Article XVIII provided that any employee could be discharged by the appointing officer with or without cause. Permanent status came only under the 1941 amendment and was given thereby to those "legally occupying, by regular appointment thereto, a position placed by this (new) Article in the classified service." [25] It is conceded that both the position of Traffic Engineer and Engineer PEC III were so placed thereby. We, therefore, rule that plaintiff did then become a permanent employee.

The 1942 ordinance gave him, as a matter of right, upon timely application, reinstatement to the class of position which he occupied at the time his military leave was granted. Therefore, the judgment ordering his reinstatement to a position in the engineer III class, and pay therefor, was proper even though the position of engineer PEC III had been abolished in the Department of Streets and Sewers during his absence. There is no claim that Section 11 of Ordinance 42437 had been amended expressly or by implication and it does not make reinstatement of veterans depend upon continuance of the exact position held at the time of beginning service. It required reinstatement "to the class of position he occupied" and not reinstatement to any particular position. [For other cases involving state or municipal provisions conforming to the Federal Act see Doris v. Heroux (R. I.), 47·Atl. (2d) 633; McLaughlin v. Retherford (Ark.), 184 S. W. (2d) 461.] However, since the object of the Act of Congress has been construed as economic (to insure the veteran against loss of income) and not penal, it has been held that the employee

should attempt to minimize damages by obtaining other work and that the employer may properly be credited with the amount of other earnings. [Dacey v. Bethlehem Steel Co., 66 Fed. Supp. 161; Dodds v. Williams, 68 Fed. Supp. 995; Boston & Maine R. R. Co. v. Bentubo (CCA1), 160 Fed. (2d) 326.] We hold that this same principle should apply to the ordinance herein involved. Here plaintiff's evidence showed that he tried to obtain employment and had done some work as a consulting engineer but had no net income because his expenses exceeded his receipts. Therefore, the part of the judgment ordering reinstatement and payment should be affirmed.

We cannot sustain the part of the judgment awarding plaintiff damages for impairment of his professional reputation as an engineer and his ability to earn a living by reason of refusal to reinstate him. We think it appears that the individual defendants were acting in good faith to work out a complicated situation, due to incomplete records of the old Efficiency Board, lack of time to make a complete change to the new civil service system before the war, later changes in classification of positions thereunder, including abolishing some of the applicable positions in the Department in which plaintiff had been employed, and the filling of the position of Traffic Engineer under civil service examinations before he returned. Public officers are not liable for an error of judgment, in line of their official duty and within the scope of their authority, resulting in a wrong decision on questions, such as the one in this case, involving the determination of facts and the application thereto of provisions of law. [43 Am. Jur. 84; Sec's. 272-275; State ex rel. Funk v. Turner, 328 Mo. 604, 42 S. W. (2d) 594; State ex rel. Songer v. Fidelity & Deposit Co. (Mo. Sup.), 53 S. W. (2d) 1036; Pike v. Megoun, 44 Mo. 491.] We hold that defendants cannot be held to any personal liability for leaving to the Courts the final decision of the question in this case, upon which there could reasonably have been a difference of opinion, before making substantial payments to plaintiff out of public funds. The City is not liable in any event because the defendants were acting as public officers in a governmental capacity. [State ex rel. Gallagher v. Kansas City, 319 Mo. 705, 7 S. W. (2d) 357.] Therefore, the part of the judgment awarding $7500.00 damages to plaintiff must be reversed.

The judgment is affirmed as to plaintiff's reinstatement and payment to him of $4416.00 for salary; but reversed as to award of $7500.00 damages. All concur.