**Adam KALLOO and Kamla Kalloo for themselves, on behalf and as parents and guardians of Chandranath Vickey Kalloo, Plaintiffs,**

v.

**Fred ENGLERTH, M.D., and Government of the Virgin Islands, Defendants.**

Civ. No. 1976/342.

District Court, Virgin Islands,
D. St. Croix.

June 6, 1977.

Jean-Robert Alfred, Christiansted, St. Croix, V. I., for plaintiffs.

Derek M. Hodge, Hodge & Sheen, Christiansted, St. Croix, V. I., for defendant, Fred Englerth, M.D.

Peter A. Martin, Asst. Atty. Gen., Charlotte Amalie, St. Thomas, V. I. for defendant, Government of the Virgin Islands.

WARREN H. YOUNG, District Judge.

I

In this personal injury action plaintiffs seek compensatory damages in the amount of $1,500,000 for injuries allegedly sustained by Chandranath Kalloo. The complaint avers that on August 27, 1974, while undergoing eye surgery under the care of Dr. Englerth and other employees of the Charles Harwood Memorial Hospital, which at all material times herein was owned and operated by the Government of the Virgin Islands, Chandranath Kalloo suffered a cardiac arrest resulting in permanent physical injuries as a consequence of the negligence of the named defendants. Dr. Englerth has moved to dismiss the complaint insofar as it pertains to him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, 5 App. I V.I.C. R. 12(b)(6), on the ground that § 2(b) of the Revised Organic Act of 1954, 48 U.S.C. § 1541(b), renders him immune from suit. In the alternative, Dr. Englerth moves the Court to enter summary judg-

ment in his favor, pursuant to F.R.C.P. 56, 5 App. I V.I.C. R. 56, on the ground that his position as a government employee, coupled with the discretionary nature of his acts herein, render him immune from tort liability to plaintiffs. For the reasons set forth below, both motions will be denied.

II

STATUTORY IMMUNITY UNDER SECTION (b) OF THE REVISED ORGANIC ACT OF 1954

In support of his motion to dismiss, defendant contends that § 2(b) of the Revised Organic Act of 1954[1] renders officers and employees of the government immune from personal tort liability for acts performed by them within the course and scope of their employ. Defendant further contends that the Virgin Islands Tort Claims Act,[2] while waiving the immunity of the government from tort liability, (left intact) the immunity of government officers and employees conferred by the Revised Organic Act. In support of his proposition, defendant cites the case of *Ocasio v. Bryan,* 374 F.2d 11 (3rd Cir. 1967) and *Camacho v. Knud-Hansen Hospital,* D.V.I., Div. St. Thomas and St. John, Civ. No. 1969/279 (opinion filed October 17, 1974).

In *Mathurin v. Government of the Virgin Islands,* 398 F.Supp. 110 (D.V.I.1975), I held that officers and employees of the government do not enjoy immunity from suit in tort for all acts performed within the scope of their employment, overruling my prior decisions to the contrary.[3] My reasoning in making the change was that to afford

---

**1.** Section 2(b) reads:
The Government of the Virgin Islands . . shall have the right to sue by such name and in cases arising out of contract to be sued: Provided, that no tort action shall be brought against the government of the Virgin Islands or any officer or employee thereof in his official capacity without the consent of the legislature constituted by this Act (48 U.S.C. § 1541(b)).

**2.** The Virgin Islands Tort Claims Act, 33 V.I.C. § 3405, et seq., provides, in pertinent part The Government of the Virgin Islands hereby waives its immunity from liability and action and hereby assumes liability with respect to

injury or less of property or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government of the Virgin Islands while acting within the scope of his office or employment, under circumstances where the Government of the Virgin Islands, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. . . .

**3.** *Simon v. Lovgren,* 368 F.Supp. 265 (D.V.I. .1973); *Spisso v. Tonkin,* 1973 St. Croix Supp. 223 (D.V.I.1973).

government employees with immunity for acts which were ministerial in nature was to ignore the policy considerations underlying the doctrine of official immunity. In holding that immunity would adhere only to those acts which involved the exercise of discretionary authority, I stated:

> However difficult a case-by-case application of the discretionary/ministerial dichotomy may prove to be, that distinction must be read into Section 2(b) of the Organic Act in order to give credence to the historical justification for the immunity doctrine. A rule which purports to shield all governmental employees from liability for their transgressions merely on a showing that said acts were done in their official capacity creates immunity not only for the department head who makes an erroneous policy decision, but also the sanitation truck driver who negligently misses a stop sign and injures a pedestrian. To afford the latter governmental immunity clearly constitutes an aberrational application of the doctrine.

398 F.Supp. at 114.

In *Dennis v. College of the Virgin Islands,* 398 F.Supp. 1317 (D.V.I.1975), two college administrators named as defendants moved to dismiss that portion of the complaint based upon the tort of false arrest on the ground that § 2(b) of the Revised Organic Act rendered them immune from suit.

Although the Court found that defendants were protected by official immunity, it must be noted that their motion was granted not because they were government officials, per se, but rather, under the test enunciated in *Mathurin,* because they were government officials performing the type of discretionary acts which warranted the protective aegis of the common law defense of official immunity. 398 F.Supp. at 1318.

 *Mathurin* and *Dennis* constitute a sufficient basis for denying defendant's motion to dismiss.[4] Although the factual settings in said cases involved intentional torts, the contraction of statutory immunity effectuated therein clearly enveloped negligent as well as intentional misfeasance. *Mathurin* and *Dennis,* however, acknowledged that § 2(b) of the Revised Organic Act encompassed the personal liability in tort of government personnel. Upon examining the policy considerations underlying the immunity doctrine, this Court therein deemed it necessary to read into § 2(b) the common law discretionary/ministerial test. However, a re-examination of the legislative history of the Revised Organic Act, as well as the germane ensuing case law, compels this Court to conclude that § 2(b) does not in any manner address the personal liability in tort of government officers and employees, and that any resort to the com-

---

4. It is necessary to note that *Morrison v. College of the Virgin Islands,* 1976 St. Croix Supp. 655 (D.V.I.1976) did not address the precise question raised in *Mathurin, Dennis* and the instant action, to wit: whether § 2(b) of the Revised Organic Act rendered all government personnel immune from suit in tort for all acts performed within the scope of their employment. *Morrison* involved, inter alia, an action brought pursuant to 42 U.S.C. § 1983 against certain college officials for alleged discriminatory employment practices. Any question as to the existence *vel non* of statutory immunity under § 2(b) was immaterial inasmuch as said section had been held to be inapplicable to an action brought pursuant to § 1983. *Ocasio v. Bryan,* 374 F.2d 11 (3rd Cir. 1967). Nonetheless, government employees are entitled to avail themselves of the common-law defense of official immunity in § 1983 actions. *Johnson v. Alldredge,* 488 F.2d 820, 826 (3rd Cir. 1973); *Fidtler v. Rundle,* 497 F.2d 794 (3rd Cir. 1974). The nature of the official immunity defense—as in tort actions—varies in scope as to different government personnel and the nature of the act called into question. *Scheuer v. Rhodes,* 416 U.S. 232, 247, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, the scope and availability of an immunity defense in § 1983 actions is a function of federal common-law, *Fidtler v. Rundle,* at 799–800, and as such does not necessarily parallel the nature and scope of such a defense in tort actions. *Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes, supra; Skehan v. Bd. of Trustees of Bloomsburg State College,* 538 F.2d 53, 60 (3rd Cir. 1976).

*Morrison,* therefore, addressed the scope and nature of the defense of official immunity in a § 1983 action as to the named defendants therein and as to the actions of said defendants which constituted the subject matter of that particular suit. The refinement of *Mathurin* and *Dennis* discussed therein, was a function of the variation of the immunity defense in § 1983 actions from that available in tort suits.

mon law discretionary/ministerial dichotomy is a function, not merely of policy considerations, but of practical necessity. Some perspective is needed.

The Organic Act of 1936 provided in section 3:

> The inhabitants of the municipality of Saint Croix and of the municipality of Saint Thomas and Saint John are hereby constituted into bodies politic and juridic, under the present name of each such municipality, and as such bodies they shall have perpetual succession and power . . . (b) to sue and in cases arising out of contract to be sued . . .

49 Stat. 1807. That Congress had not seen fit to endow the municipalities of the Virgin Islands with the capacity to be sued in tort was not surprising inasmuch as in 1936 the United States itself had consented to be sued only in cases of contract.

In *Harris v. Municipality of St. Thomas and St. John,* 212 F.2d 323 (3rd Cir. 1954), the Third Circuit interpreted section 3 of the 1936 Organic Act as it pertained to suits against the government. Plaintiff had brought a contract action [5] against the municipality for damages arising from injuries allegedly sustained due to a loose steel plate designed to cover a salt water main. The court held that the municipality had not been endowed with the capacity to be sued in tort, and that, although so endowed with respect to contract actions, was not subject to suit in contract by virtue of the Organic Act. Relying upon the reasoning employed in *People of Porto Rico v. Rosaly y Castillo,* 227 U.S. 270, 33 S.Ct. 352, 57 L.Ed. 507 (1913) and *Puerto Rico v. Shell Co.,* 302 U.S. 253, 58 S.Ct. 167, 82 L.Ed. 235 (1937) [6] the court concluded that Section 3 meant no more than that the municipality had the capacity to be sued in contract to the extent that it so consented by act of its legislative body. There having been no such consent by the legislature, the court held that the municipality could not be subjected to suit either in tort or in contract.

The above-described factual setting reappeared before the Third Circuit in *Harris v. Boreham,* 233 F.2d 110 (3rd Cir. 1956). Therein plaintiff sought, *inter alia,* to hold the Superintendent of Public Works personally liable for the injuries sustained on the ground that a public officer is personally liable for injuries resulting from negligence in the performance of ministerial duties as such an officer. The court conceded the validity of said proposition but affirmed the district court's finding that there was no negligence attributable to the named defendant. 233 F.2d at 116–17. *Harris v. Boreham* accordingly interpreted the Organic Act of 1936 as having in no manner addressed the immunity of government personnel from suit in tort actions, and under said act Virgin Islands government personnel could be held personally liable for injuries sustained as a consequence of tortious performance of ministerial duties.

The language of § 2(b) of the Revised Organic Act of 1954 manifested the Congressional intent to subject the government of the Virgin Islands to suit in contract, notwithstanding the absence of an express waiver of immunity as to such by the local legislature. Section 2(b) employed the same language of § 3 of the 1936 Act, supplementing it with the proviso that no tort action be brought against the government or against any government personnel in their official capacity without the con-

---

5. In order to circumvent the apparent prohibitive statutory language of § 3 of the Organic Act, plaintiff contended that by virtue of the Organic Act, the various municipalities had contracted with the Federal Government to maintain the streets in a safe condition, and that plaintiff was a third-party beneficiary thereof. Labeling said argument a "somewhat strained contention" the court nonetheless addressed the liability of the municipality to a suit in contract.

6. Section 7 of the Foraker Act, 31 Stat. 79, the original Organic Act for Puerto Rico, provided that the body politic of Puerto Rico had the power "to sue and be sued as such". The Supreme Court held that the effect thereof was "a recognition of a liability to be sued consistently with the nature and character of the government; that is only in case of consent duly given." 227 U.S. at 277, 33 S.Ct. at 355.

sent of the legislature of the Virgin Islands.[7] That the government was subject to suit in contract without having first expressly consented thereto was acknowledged by Judge Maris in *Felix v. Government of the Virgin Islands,* 167 F.Supp. 702 (D.V.I.1958), thereby implicitly rejecting the rationale employed in *Harris v. Municipality of St. Thomas and St. John,* 212 F.2d 323, 326 (3rd Cir. 1954). Additionally, the court in *Felix* construed § 2(b) as having left unchanged the necessity of a waiver by the government of its immunity as a condition to maintenance of a suit in tort against the government. 167 F.Supp. at 706.

But what of the personal liability of government officers and employees? Did Congress intend, via § 2(b) of the Revised Organic Act, to shield government personnel from personal liability in tort? Or did the language "or against any officer or employee thereof in his official capacity" constitute added protection of the government treasury against suits which, though nominally directed against government personnel in their official capacities, were in reality against the government of the Virgin Islands.[8]

■ The pertinent legislative history indicates that Congress was concerned solely with shielding the government itself from liability in tort except to the extent that it subsequently consented thereto. The report of the Committee on Interior and Insular Affairs upon the bill states: "Subsection (b) of section 2 provides that the *government* of the Virgin Islands may sue, and except for a tort action in connection with which the legislature has not given its consent, be sued." (emphasis supplied).[9] The statement of the Managers on the part of the House of Representatives contains an equally curt summary of the purpose and effect of § 2(b): "Subsection (b) provides that the government of the Virgin Islands may sue, in cases arising out of contract, and except for a tort action in connection with which the legislature has not given its consent, be sued."[10] Had Congress intended to drastically modify the then existing law of the Virgin Islands with respect to the immunity of government personnel, surely some mention of such intent would be contained in the legislative reports on the purpose and effect of the various sections of the Revised Organic Act. The above quoted statements indicate that Congress' sole concern pertained to the liability of the Virgin Islands governmental entity and the public treasury. Subsequent case law with respect to § 2(b) amplified the limited intent of Congress.

In *Southerland v. St. Croix Taxicab Assoc. and the Government of the Virgin Islands,* 315 F.2d 364 (3rd Cir. 1963) plaintiff sought injunctive relief against the named defendants. The government contended that the lower court had lacked subject matter jurisdiction insofar as the matter pertained to the government because the action sounded in tort and § 2(b) barred the same, absent a waiver by the legislature. The Court of Appeals narrowly construed § 2(b) as barring only damage actions against the public treasury.

> The prohibition of the Organic Act is directed to actions to recover damages for torts alleged to have been committed by the Government through its officers or employees. It has no application to an equitable action which does not ask for damages but which merely seeks an injunction restraining future enforcement

7. See footnote 1, supra.

8. See *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Jaffe, "Suits Against Governments and Officers: Sovereign Immunity", 77 Harv.L.Rev. 1 (1963).

9. Senate Report No. 1271, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News pp. 2585, 2593.

10. House Report No. 1603, 83d Cong., 2d Sess., 1954 U.S.Code Cong. & Admin.News p. 2619.

against the plaintiff for an exclusive franchise granted by the Government. 315 F.2d at 369.

■ In *Ocasio v. Bryan,* 374 F.2d 11 (3rd Cir. 1967) plaintiffs brought § 1983 actions against certain police officers for damages. The district court had dismissed the action on that ground that § 2(b) barred the same. The Third Circuit reversed, stating:

Section 2(b) was intended to bar tort actions against the Government of the Virgin Islands without its consent. It therefore provides against evasion of its policy of sovereign immunity in tort through the device of a suit against an officer or employee of the Government in his official capacity. See generally, Block, Suits Against Government Officials and the Sovereign Immunity Doctrine, 59 Harv.L.Rev. 1060 (1946). *So construed, the provision envelops government officers with immunity only where the suit is in reality against the Government itself, so that an adverse judgment would require a payment out of public funds, rather than a payment by an individual in his private capacity.* [citation] The immunity provision of § 2(b) therefore does not extend to a police officer who is sued for damages under the Civil Rights Act. For it is well settled that in such cases recovery runs against the officer himself in his private capacity and not against the Government . . . (emphasis supplied)

374 F.2d at 13.

■ It is clear from the above passage that the Third Circuit construed the phrase "or against any officer or employee thereof in his official capacity" to bar, not suits against government personnel in their personal capacity, but rather any attempt to evade the policy of sovereign immunity through a suit against a government officer in his official capacity. The instant action is directed, not against the public treasury, but rather against the personal assets of defendant. The reasoning of the court in *Ocasio v. Bryan* applies with equal force to the instant lawsuit as it does to actions

brought under the Civil Rights Act. That the Third Circuit did not specifically address the permissibility *vel non* of suits in tort against government personnel is attributable to the simple fact that said question was not presented in *Ocasio v. Bryan.* Yet even a cursory reading of the court's opinion manifests that § 2(b) does not, in any manner, bar tort actions against officers and employees of the government in their personal capacity.

Nonetheless, the district court decisions rendered subsequent to *Ocasio v. Bryan* held § 2(b) to constitute a bar to tort actions brought against government personnel. *Spisso v. Tonkin,* 1973 St. Croix Supp. 223 (D.V.I.1973); *Simon v. Lovgren,* 368 F.Supp. 265 (D.V.I.1973); *Sargent v. Paiewonsky,* 10 V.I. 544 (D.V.I.1974); *Camacho v. Knud-Hansen Hospital,* D.V.I., Div. St. Thomas and St. John, Civ. No. 1969/279 (opinion filed October 17, 1974). Said decisions neither square with the legislative history of § 2(b), nor with subsequent interpretations thereof by the Third Circuit.[11]

■ In *Mathurin v. Government of the Virgin Islands,* 398 F.Supp. 110 (D.V.I.1975) I effectively overruled my prior decisions in *Spisso* and *Simon.* In so doing, however, I implicitly depicted § 2(b) as speaking to the issue of official immunity, and the contraction of my prior holdings was predicated upon the policy considerations underlying the immunity doctrine. Based upon the foregoing analysis, I must now hold that if a government officer or employee is to invoke the protective aegis of official immunity in an action sounding in tort, he must of necessity find such in the common law, for § 2(b) of the Revised Organic Act offers the officer or employee no such protection. Defendant's motion to dismiss the instant action, as it pertains to him on the ground of statutory immunity, will accordingly be denied.

---

11. Nor for that matter with the interpretation thereof by the office of the Attorney General. 3 V.I. Op. A.G. 251.

## III

### COMMON LAW IMMUNITY OF GOVERNMENT OFFICERS FROM SUITS FOR TRADITIONAL TORTS [12]

■ Defendant contends that notwithstanding the absence of statutory immunity from tort liability he is nonetheless entitled to an entry of summary judgment in his favor inasmuch as the actions complained of herein involved the exercise of discretionary duties.[13]

■ It has long been held that judges and legislators are absolutely immune from personal liability in tort for their official acts, even when their conduct is alleged to be corrupt or malicious and intended to do injury. *Bradley v. Fisher,* 13 Wall. 335, 20 L.Ed. 646 (1871); *Kilbourn v. Thompson,* 103 U.S. 168, 26 L.Ed. 377 (1881); *Ginsburg v. Stern,* 19 F.R.D. 238 (W.D.Pa.1956), *affirmed in part, vacated in part,* 242 F.2d 379 (3d Cir. 1957). The tentative draft of the Restatement adopts this position and ex-

pounds upon the justification for such a broad immunity defense.

The reason for this holding has been held to lie not in the desire to protect the individual from liability for his own unjustifiable conduct, but in the necessity of protecting all such officers, and with them the public service and the public interest, from the deterrent effect of suit, or threat of suit, alleging improper motives in every case in which there has been no more than a mistake, or a disagreement on the part of the complaining party, with the decision taken. The policy is to free the officer from the necessity of submitting his purposes and beliefs to the uncertain appraisal of juries or even judges.

Restatement of the Law, Second, Torts, Tent. Draft No. 19 § 895 D, comment C at p. 39, March 30, 1973; see *Spalding v. Vilas,* 161 U.S. 483, 498, 16 S.Ct. 631, 40 L.Ed. 780

---

12. A caveat is in order. The instant inquiry is restricted solely to the scope of official immunity in common law suits for traditional torts. The scope of immunity in § 1983 actions and in what has become known as *Bivens* tort actions, *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), is a function of a distinct and increasingly volatile body of federal case law. See fn. 4, *supra;* Davis, Administrative Law of the Seventies § 26:00 (1976). Although numerous courts appear to treat the immunity defense as a unitary doctrine, recent Supreme Court decisions in the area of § 1983 actions reveal that officers who enjoy an absolute immunity from tort liability may have only a qualified good faith immunity in § 1983 actions and in *Bivens* tort actions. *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); see *Morrison v. College of the Virgin Islands,* 1976 St. Croix Supp. 655 (D.V.I.1976).

This situation has been attacked by courts and commentators as being both analytically unsound and also unmanageable from a practical point of view. Davis, supra at 573–95. A private individual who has been subjected to the malicious actions of a government official should be compensated for any injuries thereby suffered regardless of whether or not the official's conduct rose to constitutional dimensions. This is especially so in light of the increasingly Delphic quality of the line between constitutional and nonconstitutional torts. Nonetheless, the Supreme Court, while broad-

ening the liability of public officials in the executive branch of government in § 1983 and in *Bivens* tort actions, has refrained from overruling the leading cases on executive official immunity in traditional tort damage actions. *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896).

Until such time as the Supreme Court reexamines and contracts the *Barr* doctrine, this Court will adhere to what it perceives to be the majority view with respect to the scope of immunity in traditional tort actions for high level officials in the executive branch of government whose position require the continual discharge of governmental discretionary functions. Such officials will be cloaked with absolute immunity from personal tort liability for the exercise of such discretionary functions within the scope of their employment. See fn. 16, 18, infra.

13. The crux of the instant inquiry pertains to the scope of immunity of doctors in traditional common law tort actions. Although the official immunity defense is discussed herein in relation to other public officials as well, it is done so solely for the purpose of providing some guidance as to the direction this Court will take in future cases. Inevitably some refinement thereof may be in order as the Court is called upon to focus specifically upon various government officers and employees.

(1896); *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949).[14]

 Similarly "high level" officials of the executive branch of government have traditionally enjoyed an absolute immunity from suit in tort for those actions which involve the exercise of discretionary duties irrespective of motive.[15] *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896). The tentative draft of the Restatement provides:

A high level executive officer is usually accorded the same type of immunity as that given the judge, and for the same reasons. He, too, must feel free to act in his discretionary decisions as he sees fit, without being subject to influence by the threat of a harassing suit. Otherwise the administration of the government would be seriously impaired. In addition, if the court seeks in a tort action to pass judgment upon his decisions, it is actually in the position of second-guessing the policy determinations of a coordinate branch of the government. It is not the function of the court to undertake itself to make the type of policy decision which is better left to the administrative position where the task is placed.

But the immunity is not confined to the executive officials who are at the highest level. It extends also to lower administrative officers when they engage in making a decision by weighing the policies for and against it. For these reasons it is commonly said that public officers are given an immunity from liability in tort when they engage in exercising a "discretionary function".

Restatement of the Law, Second, Torts, Tent. Draft No. 19 § 895 D, comment d at p. 40, March 30, 1973.[16]

The question as to the availability of the immunity defense to a member of the executive branch cannot be resolved by merely referring to the dictionary meaning of the term "discretionary". For nearly every action of an individual is permeated to some degree with the task of decision making. "It would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance, even if it involved only the driving of a nail." *Ham v. Los Angeles County,* 46 Cal.App. 148, 162, 189 P. 462, 486 (1920). Can it safely be said that the proverbial sanitation truck driver in *Mathurin* partakes of no discretionary exercise during the operation of his vehicle?

 The discretionary/ministerial dichotomy was the product of judicial recog-

---

**14.** The same policy considerations have prompted the Supreme Court to extend the absolute immunity doctrine in § 1983 actions to judges, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) and to legislators, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), as well as to prosecutors performing quasi-judicial functions, *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

**15.** In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), and *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), the Supreme Court refused to extend the absolute immunity defense to the executive branch in § 1983 actions. Such officials were held to enjoy only a qualified good faith immunity for their discretionary actions. *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) extends a similarly limited immunity to federal officials alleged to have committed torts of constitutional dimensions.

**16.** Although the tentative draft adopts *Barr* —recognizing an absolute immunity from tort liability on behalf of officials maintaining "high" positions within the executive branch— the Restatement refrains from extending the *Barr* doctrine throughout the executive branch of government. Rather, it recognizes that the policy considerations germane to the immunity issue may, with respect to certain personnel and certain acts, justify only a qualified good faith immunity. This Court will adopt the position enunciated in the tentative draft, recognizing *Barr* but restricting its application.

The absolute v. qualified immunity distinction need only be addressed, however, where malicious, intentional tortious conduct is alleged. Both immunities will shield an officer or employee where only negligence is averred, as herein. Accordingly, the instant inquiry pertains only to the availability to government doctors of the immunity defense from alleged acts of negligence committed during the course of their official employment.

nition that public officials would be unduly intimidated in the discharge of their official duties if they were shadowed by the threat of personal liability on every occasion that they were called upon to effectuate their decision making responsibilities. This factor, together with the manifest inequity of charging executive officials with the responsibility of making decisions, while holding them accountable to the after-the-fact judgment of others who possess no expertise in the given area, led to a rule that such government personnel should not be held personally liable for conduct of a type for which the imposition of liability would hamper the effective discharge of discretionary governmental duties. The availability of the immunity defense should not, therefore, turn on simply whether the actions complained of involved decision making—or whether the defendant official occupied a "high or low" government position. The courts have the responsibility of determining not only whether the official was engaged in a discretionary governmental function, but also the extent to which the imposition of liability for the tortious discharge of that function would hamper the effective performance of the official's general discretionary duties and the extent to which this circumstance should work in the official's defense.

To be sure, the scope of immunity varies as to different executive personnel. However, the parameters of the immunity defense admit of no simple, single formula, but rather numerous, often competing considerations of which the Court must take account, not all of which will be germane in every given case. *Among* the pertinent factors are: (1) the nature of the function which the official is performing and its uniqueness in relation to the functions performed by the official's counterparts within the private sector;[17] (2) the extent to which the imposition of liability in a particular action would hinder the free exercise of discretion by the officer of his general official duties;[18] (3) the extent to which passing judgment on the exercise of discretion amounts to holding a coordinate branch of government accountable to the court for its conduct; (4) the nature of the injury suffered by the party seeking to impose liability upon the officer; (5) the likelihood and nature of the harm that will result to members of the public in the event that liability is imposed upon the government official; (6) the extent to which the ultimate financial responsibility will fall on the officer or employee; (7) the availability to the injured party of other remedies and alternative forms of relief.

I am familiar with the public medical facilities in the Virgin Islands and am fully aware of the elements of uniqueness of defendant's position vis-a-vis his counterpart in the private sector. Government employed doctors possess neither the power to select their patients nor the quality and quantity of assistants, supplies, and physical resources available to private physicians. This Court is mindful of the duty imposed upon government doctors to render the best possible medical care to all of the public who require their attention, notwithstanding the aforedescribed limitations. To add to this fettered medical practice the threat of liability for mistakes made during the exercise of medical judgment would serve, in the final analysis, to possibly decrease the level of medical care available to the people of the Virgin Islands who need and seek public medical care. The Court is cognizant of the fact that an action for damages—albeit limited to the sum of $25,000[19] —may be maintained against the government itself for injuries suffered as a consequence of the negligent or otherwise tor-

---

**17.** *Griffin v. United States,* 500 F.2d 1059 (3d Cir. 1974) involved a tort action against the government, not against an official personally. Nonetheless the court's discussion of the distinction between the exercise of judgment per se, and the exercise of policy-making judgment of a governmental nature is pertinent herein.

**18.** This consideration is of extreme import as to any determination regarding the availability of an absolute rather than qualified immunity defense.

**19.** 33 V.I.C. § 3411.

tious conduct of government employees,[20] and that such an action would not be subject to the formidable immunity defense obstacle.

However, I am also mindful of the compelling need and desire to fully compensate individual victims of medical misfeasance or nonfeasance. Furthermore, the reasonableness of the conduct and judgment of private physicians is constantly the subject of judicial scrutiny. It is impossible at this stage of the proceedings to determine in whose favor the balance of considerations be. Further factual development is necessary before an ultimate determination can be made.

First and foremost is the need for further development of the alleged cause of plaintiff Chandranath Kalloo's injuries. Although Dr. Englerth, in his supporting memorandum, contends that the actions complained of involved the exercise of medical judgment, the record is devoid of specific matters as to which the Court can take notice which support said assertion.[21] Until such matter is more fully developed, either through discovery mechanisms or at trial, the Court is precluded from ascertaining the extent to which the imposition of liability herein would hinder the desired free exercise of discretion by defendant in the discharge of his general official functions.

Also absent from the record is any factual development as to the extent to which defendant would have to bear the ultimate financial burden stemming from the imposition of liability herein. This consideration is extremely crucial to determine whether the defense of immunity should be available. The very basis for the judicial development of the immunity doctrine rests upon the effects which the bearing of liability by the officer would have on the discharge of his official duties. To the extent that Dr. Englerth would not bear ultimate responsibility, the detrimental ramifications are mitigated.

The pendency of a lawsuit, in and of itself, can hinder a public official in the free exercise of his discretionary duties. Accordingly, in the event that future discovery herein may yield the factual information necessary for a judicial determination as to the availability of the immunity defense herein, I will entertain anew a motion by defendant for summary judgment. Failing such, further factual development at trial will be necessary.

---

**20.** Unless, of course, the conduct was *so deviant* as to be ultra vires the scope of the individual's government employ.

**21.** Although defendant makes numerous references to certain depositions, no such materials have been filed with the Court.