**STATE of Missouri, ex rel. ELI LILLY AND COMPANY, Relator**

**v.**

**The Hon. Carl R. GAERTNER, Judge of the Circuit Court of the City of St. Louis, Missouri, Division Number One, Respondent.**

**STATE of Missouri, ex rel. Jerome RILEY, et al., Relator**

**v.**

**The Hon. Carl R. GAERTNER, Judge of the Circuit Court of the City of St. Louis, Missouri, Division Number One, Respondent.**

Nos. 42082, 42083.

Missouri Court of Appeals,
Eastern District,
Division No. 4.

May 12, 1981.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 12, 1981.

Application to Transfer Denied
Sept. 8, 1981.

Richard B. Scherrer, Mogab & Hughes, Tom Gregory, St. Louis, for relator.

Simon Tonkin, St. Louis, for respondent.

SIMON, Judge.

Lourine Brown died on April 27, 1978 while a patient at Malcolm Bliss Mental Health Center in the City of St. Louis. On April 9, 1979 Jerome and Theresa Riley, minors, by and through their next friend, Theodis Brown, filed a petition seeking damages for the wrongful death of Lourine Brown, their mother. Count I of their petition alleged medical malpractice in the administration to Mrs. Brown of the drug, sodium amytal, and named six doctors as defendants.[1] In Count II plaintiffs sought damages from Eli Lilly and Company, manufacturer of the drug, on the grounds that the drug administered to Mrs. Brown which plaintiff claims caused her death was "not reasonably safe when put to [the] use reasonably anticipated." Defendant Lilly answered and filed a cross-claim against the doctors seeking a determination of relative fault. Three of the named doctors filed motions to dismiss both the plaintiffs' petition and Lilly's cross-claim.[2] Defendants'

---

1. Two of the doctors were designated as "John Doe # 1, M.D. and John Doe # 2, M.D.

2. One of the named doctors was not served and no one appeared in behalf of doctors Doe # 1 and # 2.

motion to dismiss plaintiffs' petition was sustained on the grounds that the doctors are public officials clothed with official immunity. The court stated that it would also dismiss Lilly's cross-claim on the same grounds within twenty days from argument of defendants' motion to dismiss that cross-claim. At the same time the court set aside its previous order dismissing plaintiffs' petition, such order to be held in abeyance for twenty days to allow plaintiffs and Lilly to file their petition for a writ of prohibition with this court. Both writs, treated on a consolidated basis, were preliminarily granted.

 The threshold question presented is the propriety of the issuance of the preliminary writ. If the respondent Judge exceeded his jurisdiction in sustaining defendants' motions to dismiss, this court may prevent the enforcement of that order by issuing a writ of prohibition. There is no factual dispute involved here. The issue of respondent's jurisdiction and his right to enforce the order of dismissal is one of law cognizable by a prohibition proceeding. *State ex rel. Junior College Dist. of St. Louis, St. Louis County v. Godfrey*, 465 S.W.2d 1, 3 (Mo.App.1971). *See also State ex rel. Sisters of St. Mary v. Campbell*, 511 S.W.2d 141 (Mo.App.1974). Moreover, respondent's proposed order of dismissal as a dismissal of only one count of plaintiffs' petition is not an appealable order. *Hill v. Boles*, 583 S.W.2d 141, 148 (Mo.banc 1979). Therefore prohibition is the only available remedy to prevent respondent from exceeding his jurisdiction. *See State ex rel. Junior College Dist. of St. Louis, St. Louis County v. Godfrey, supra* at 3.

The respondent bases his dismissal of plaintiffs' petition and the cross-claim on the doctrine of official immunity. The common law doctrine of immunity from tort liability, and official immunity have undergone significant judicial and legislative changes in recent years. In the case of *Jones v. State Highway Comm'n*, 557 S.W.2d 225 (Mo.banc 1977), our Supreme Court put to rest the common law doctrine of sovereign immunity from tort liability. However, the doctrine was abrogated prospectively as to all claims arising on or after August 15, 1978, to give the legislature the necessary time in which to consider the issue. Our legislature responded by resurrecting sovereign tort immunity by enacting § 537.600, RSMo. 1978 [3] which provided, in substance, that such sovereign tort immunity as existed at common law in our state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, would remain in full force and effect; excepting, in certain circumstances not applicable to the present facts.[4]

 It is clear that the *Jones* court did not, in abrogating sovereign immunity, intend to abrogate official immunity. Our colleagues in the Western District, in *Jackson v. Wilson*, 581 S.W.2d 39 (Mo.App.1979), have so found. When a public official is acting in a judicial fashion, i. e., exercising judgment and discretion he is immune, in the absence of willful wrongdoing, from suits filed as a result of his actions. The policy underlying the doctrine of official immunity is the necessity for a vigorous and effective government which can operate free from the fear of suits filed as a result of its actions. *Id.* at 42–43.[5]

3. All references are to RSMo. 1978 unless otherwise noted.

4. The sovereign is not immune in instances involving (1) injuries directly resulting from the negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course of their employment; and (2) injuries caused by the condition of a public entity's property under certain conditions.

5. It is often said that the doctrine of official immunity protects public officials from liability in the exercise of their official duties. *See e. g. Feuchter v. City of St. Louis*, 357 Mo. 616, 210 S.W.2d 21, 25 (1948); *Fidelity & Casualty Co. of New York v. Brightman*, 53 F.2d 161, 165, 166 (8th Cir. 1931). Their immunity, however, not only shields them from liability, it acts to halt actions against them at their inception once it has been proven that the acts complained of were performed by the officer within the course of his official duties. *Konigsberg v. Hunter*, 308 F.Supp. 1361, 1365 (W.D.Mo.1970).

A public office is the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public. The individual so invested is a public officer. *State ex rel. Pickett v. Truman,* 333 Mo. 1018, 64 S.W.2d 105, 106 (Mo. banc 1933). That portion of the sovereign's power delegated to the officer must be exercised independently, with some continuity and without control of a superior power other than the law. *Kirby v. Nolte,* 349 Mo. 1015, 164 S.W.2d 1, 8 (Mo. banc 1942); *See State v. Pigg,* 363 Mo. 133, 249 S.W.2d 435, 437–38 (Mo. banc 1952). Whether or not a public employee is a public officer is dependent upon the legal and factual circumstances involved. *See* e. g., *Metcalf v. Mitchell,* 269 U.S. 514, 520, 46 S.Ct. 172, 173, 70 L.Ed. 384 (1926) (consulting engineer is not a public official); *State ex rel. Scobee v. Meriwether,* 355 Mo. 1217, 200 S.W.2d 340, 342 (Mo.banc 1947) (court reporter not a public officer); *State ex rel. Hull v. Gray,* 91 Mo.App. 438, 443 (1902) (chief engineer of city hall not an officer but mere employee); *Reese v. Danforth,* 486 Pa. 479, 406 A.2d 735, 740 (1979) (public defenders are not public officials). *But see McSween v. State Live Stock Sanitary Bd.,* 97 Fla. 749, 122 So. 239, 249 (1929) (state veterinarian is a public official). *See generally* 67 C.J.S. Officers §§ 7–10 (1978); 63 Am.Jur.2d *Public Officers and Employees* §§ 10–12 (1972).

Our legislature has expressed the intent to provide care to Missouri residents suffering from mental illness or retardation. Section 202.020. The superintendents of the various care facilities, one of which is Malcolm Bliss Mental Health Care Center, are appointed by the director of the department of mental health. The director is appointed by the state mental health commission. Sections 202.040 and 202.035. The duties of both the directors and superintendents of mental health facilities are defined by statute. *E. g.* §§ 202.050, 202.051, 202.110, 202.115, 202.120, 202.150, 202.153, 202.180, 202.183, 202.187, 202.190, 202.193. Their duties and authority are conferred by law. As administrators of a state owned facility the directors and superintendents exercise some portion of the sovereign's power in the performance of their statutorily designated duties. They are, therefore, public officers entitled to official immunity. *See Konigsberg v. Hunter, supra,* n. 5 at 1365. The same cannot be said for physicians employed in the mental care facilities. In the performance of their duties they are answerable to the facility's superintendent. Their duties and authority are not set out in the statute as are those of the directors and superintendent but are such as the superintendent of the care facility determines. Such duties do not involve any exercise of the sovereign's power, rather the physicians are required, when employed by the state, to render the identical services as required when employed in the private sector, i. e., to provide mental health care. While our legislature has provided for employment of physicians by the superintendents of mental health facilities such statutory provisions did not create immunity for these public employees. *State ex rel. Hull v. Gray, supra,* at 442.

The mere fact that defendants are compensated by public funds is not evidence of legislative intent that they be afforded immunity. *C.f. Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 408, 62 L.Ed.2d 355 (1979).

Counsel has not referred us to, nor has our research revealed any cases wherein state employed physicians have been characterized as either employees or officials. However, we find, as a result of the foregoing analysis that the defendant physicians are not public officials entitled to immunity but are employees subject to suit in which their liability for medical malpractice may or may not be established.

Furthermore, even if the doctors are considered to be public officers, the performance of their duties does not require the

exercise of "discretion" in the legal sense of that term. The purpose of official immunity is to protect public officers from the consequence of erroneous or negligent judgments made in the execution of their official duties. The duties of all public officials involve the exercise of functions for the public benefit. The discretionary decisions, the protection of which is the purpose of the doctrine of official immunity, are those which are a manifest exercise of the sovereign's power—those decisions which "go to the essence of governing." *C.f. Jones v. State Highway Comm'n, supra* at 230.[6]

Prior decisions have characterized the activities of public officials as either "ministerial" or "discretionary." Ministerial duties are those of a clerical nature performed in obedience to mandate without the exercise of judgment and are therefore not immune from suit. *Jackson v. Wilson, supra* at 43, *Yelton v. Becker*, 248 S.W.2d 86, 89 (Mo.App.1952). Defendants would characterize all official duties, other than those which fall within the "ministerial" category, as "discretionary." To do so would extend the doctrine of official immunity from tort liability to all decisions made by public officials or employees for almost every act requiring the use of discretion or judgment. *Kalloo v. Englerth*, 433 F.Supp. 504, 512 (D.V.I. 1977). Shielding officials for decisions other than those made in the exercise of the sovereign's power which go to the essence of governing, extends the doctrine of official immunity beyond its original intent to promote smooth and effective government. The defendants' decision in this case, i. e., the administering of sodium amytal to Mrs. Brown, was a medical one. It was not a decision which went to the essence of governing nor was it an administrative decision resulting from the exercise of governmental discretion. Compare the facts in the instant case with those in *Jackson v. Wilson, supra*, upon which the respondent based his decision that the defendants were immune from suit. In the *Jackson* case plaintiff was injured while diving into a pool maintained by the Missouri Department of Natural Resources. He sued the Director of Parks and Recreation alleging, inter alia, that "as titular head of the state park system he was guilty of negligently exercising his discretion and judgment regarding the formulation of policies for supervision of St. Francois State Park."[7] The *Jackson* court quoting with approval our Supreme Court's statement in *Jones, supra*, that no action in tort would lie for decisions "which go to the essence of governing", held the director immune from suit. *Id.* at 43.

The defendant doctors are being sued as treating physicians, not as titular heads of any department nor are they being sued for allegedly negligent administrative policy decision, i. e., those "which go to the essence of governing." They are not being sued for an erroneous decision requiring the exercise of governmental judgment and discretion but for an allegedly erroneous medical decision for which they should answer without a shield of immunity. *Henderson v. Bluemink*, 511 F.2d 399, 402–03 (D.C. Cir. 1974).

We are not unaware of the financial repercussions of our decision.[8] Doctors serving the public are frequently paid less than those in the private sector and cannot as readily afford malpractice insurance.[9] However to allow doctors who are employed in public facilities to escape liability for acts which the doctor serving the private sector would be held liable would defeat the express legislative intent to provide public

---

6. We are aware that § 537.600 limited the holding in *Jones v. State Highway Comm'n*, however the rationale behind the *Jones* Courts' distinction between discretionary decisions which go to the essence of governing and those which do not has not been limited and we adopt that rationale.

7. Plaintiff also sued on a theory of respondeat superior which is not relevant to our decision.

8. Section 105.710 relieves the doctors of the ultimate financial burden imposed by our decision. *C. f.* Op. Att'y Gen. No. 133 (1973).

9. See *Ferri v. Ackerman, supra*, where the court held that attorneys appointed to represent indigent defendants in Federal cases are not immune under Federal law from malpractice suit filed in state court.

facility patients with "medical care and treatment in accordance with the highest standards accepted in medical practice." Sec. 202.205.

If publicly employed physicians are paid less than their counterparts in the private sector and the burden of defending malpractice claims proves to be disproportionately burdensome, then there may be some justification for affording such physicians some form of official immunity. The resolution of such a problem, should it arise, is, however, more properly left with our legislature.

We conclude that the duties of the defendant doctors do not require the exercise of governmental discretion. The defendants' activities generally parallel those of doctors practicing privately and are not therefore immune from suit.

The writ of prohibition preliminarily granted by this court is made absolute.

SMITH, P. J., and SATZ, J., concur.